IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:CR-05-443 |
| | ) | |
| v. | ) | (JUDGE KANE) |
| | ) | |
| FRANKLIN ROBINSON aka Michael Tucker aka "Silk" aka "Silky Red," | ) | (ELECTRONICALLY FILED) |
| | ) | |
| DEREK MAES aka "Prince," | ) | |
| | ) | |
| TERRANCE WILLIAMS aka "Sleazy T," | ) | |
| | ) | |
| DERICK PRICE aka "Coleone" aka "Toone," | ) | |
| | ) | |
| DAWAN OLIVER aka "Thug" aka "Finesse," | ) | |
| | ) | |
| KENNETH BRITTON aka "KB" aka "Kalgon," | ) | |
| | ) | |
| SHIMON MAXWELL aka "Smooth," | ) | |
| | ) | |
| ERIC PENNINGTON aka "Escalade," | ) | |
| | ) | |
| ERIC HAYES aka "International Ross" aka "Ross," | ) | |
| | ) | |
| KORY BARHAM aka "Cutty Blue" aka "Cuttlas Y. Blue," | ) | |
| | ) | |
| ROBERT SCOTT, Sr. aka "Big Rob," | ) | |
| | ) | |

FILED
HARRISBURG, PA

DEC - 8 2005

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

ROBERT SCOTT II aka "Lil' Rob"   )
aka "Clever,"   )

   )

DAVID POWERS,   )

   )

ATLAS AQUARIUS SIMPSON   )
aka "Large,"   )

   )

MELISSA JACOBS aka "Storm" and )

   )

TANA ADKINS aka "Sapphire,"   )

   )

Defendants.   )

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times pertinent to this Indictment:

1.   The defendants **FRANKLIN ROBINSON**, **DEREK MAES**, **TERRANCE WILLIAMS**, **DERICK PRICE**, **DAWAN OLIVER**, **KENNETH BRITTON**, **SHIMON MAXWELL, ERIC HAYES**, **ERIC PENNINGTON**, **KORY BARHAM**, **DAVID POWERS**, **ROBERT SCOTT, SR.**, **ROBERT SCOTT II** and unindicted co-conspirator Wayne Banks were engaged in prostitution as "pimps," that is, individuals who recruit, direct, manage, oversee, discipline and live

off the earnings of prostitutes. In addition, a pimp enters into agreements with other pimps to divide up territory, sets the prices that a prostitute will charge for a particular sexual service, takes control over a certain area or truck stop in order to limit the number of prostitutes permitted to work in the area, passes information regarding police activity in the area, and assists other pimps in hiding women who may become witnesses against them.

2.    The defendant **ATLAS AQUARIUS SIMPSON** facilitated the prostitution conspiracy by transporting and by arranging for the transportation of women and children for prostitution, paying fines on behalf of other defendants for women and children arrested for prostitution-related charges, identifying women and children as targets for recruitment into prostitution, keeping the other defendants apprised of law enforcement activity in the Harrisburg, Pennsylvania area, and providing a residence for harboring prostitutes and pimps while they were engaged in prostitution activities in the Harrisburg, Pennsylvania area.

3.    The defendants **FRANKLIN ROBINSON**, **DEREK MAES**, **TERRANCE WILLIAMS**, **DERICK PRICE**, **DAWAN OLIVER**, **KENNETH BRITTON**, **SHIMON MAXWELL**, **ERIC HAYES**, **ERIC PENNINGTON**, **KORY BARHAM**, **DAVID POWERS**, **ROBERT SCOTT, Sr.**, **ROBERT SCOTT II** and unindicted co-conspirator Wayne Banks operated prostitutes at various locations, including truck stops and "the track," a designated area within an urban center in which prostitutes roam the streets in order to exchange sexual services for money.  The defendants operated a prostitution enterprise in several states including Ohio, Michigan, Indiana, Illinois, Arkansas, Virginia, Georgia, Maryland, Tennessee, the District of Columbia, California, Florida, Nevada, Texas, Louisiana and Pennsylvania.  Since at least February 2001, the defendants operated their prostitution enterprise in the Harrisburg, Pennsylvania area and elsewhere.

4.    The defendants **MELISSA JACOBS** aka "Storm" and **TANA ADKINS** aka "Sapphire" were prostitutes who worked for the defendants **DEREK MAES** and **KENNETH BRITTON,** respectively,

4

as "bottom bitches," that is, prostitutes in charge of a pimp's other prostitutes, responsible for recruitment, training, collection of earnings, forwarding the earnings to the pimp and oversight over the other prostitutes. When called upon to do so, the "bottom bitch" will defend her territory against other prostitutes and will attack "renegades," that is, prostitutes who work without a pimp or with a pimp who does not have a working agreement with her pimp.

5.    The defendants were also involved in the trafficking of juveniles, that is, they recruited girls under the age of 18 years to work for them as prostitutes, transporting those juveniles in interstate commerce for prostitution purposes.

6.    The defendants used Western Union to send the proceeds of prostitution activity in interstate commerce for the purpose of promoting the illegal activity and disguising the nature, location, source, identity and ownership of the illegal proceeds.

7.    The defendants traveled and caused others to travel in interstate commerce for the purpose of facilitating and distributing the proceeds of their prostitution activities.

THE GRAND JURY FURTHER CHARGES:

## COUNT ONE

8.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in the Introduction portion of this Indictment.

9.    From in or before February 2001, up to and including the date of this Indictment, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere, the defendants

**FRANKLIN ROBINSON**
aka Michael Tucker aka "Silk" aka "Silky Red,"

**DEREK MAES** aka "Prince,"

**TERRANCE WILLIAMS** aka "Sleazy T,"

**DERICK PRICE** aka "Coleone" aka "Toone,"

**DAWAN OLIVER** aka "Thug" aka "Finesse,"

**KENNETH BRITTON** aka "KB" aka "Kalgon,"

**SHIMON MAXWELL** aka "Smooth,"

**ERIC PENNINGTON** aka "Escalade,"

**ERIC HAYES** aka "International Ross" aka "Ross,"

**KORY BARHAM** aka "Cutty Blue" aka "Cuttlas Y. Blue,"

**ROBERT SCOTT Sr.**, aka "Big Rob,"

**ROBERT SCOTT II** aka "Lil' Rob" aka "Clever,"

**DAVID POWERS,**

**ATLAS AQUARIUS SIMPSON** aka "Large,"

**MELISSA JACOBS**, aka "Storm" and

**TANA ADKINS**, aka "Sapphire,"

did knowingly and willfully combine conspire, confederate and agree together and with other persons both known and unknown to the Grand Jury to commit the following offenses against the United States:

9.1    Knowingly transport individuals in interstate commerce with intent that such individuals engage in prostitution and other sexual activity for which any person can be charged with a criminal offense in violation of 18 U.S.C. §2421;

9.2    Knowingly persuade, induce, entice and coerce individuals to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense in violation of 18 U.S.C. §2422(a); and

9.3    Travel in interstate commerce and use facilities in interstate commerce with intent to distribute the proceeds of

7

an unlawful activity and promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, prostitution in violation of 18 U.S.C. §1952(a).

## OVERT ACTS

10.    In furtherance of the conspiracy and to effect the objects thereof, the defendants and their co-conspirators committed the following overt acts, among others, in the Middle District of Pennsylvania and elsewhere:

10.1    Between on or about April 13, 2005 and continuing up through on or about August 21, 2005, the defendants **FRANKLIN ROBINSON, DEREK MAES, KENNETH BRITTON, TERRANCE WILLIAMS, MELISSA JACOBS, DERICK PRICE, DAWAN OLIVER, ERIC PENNINGTON, ERIC HAYES, ROBERT SCOTT, SR., DAVID POWERS, ATLAS AQUARIUS SIMPSON,** and unindicted co-conspirator Wayne Robert Banks engaged in a series of telephone conversations for the purpose of furthering the criminal goals of the prostitution enterprise.

10.2    The defendant **FRANKLIN ROBINSON** transported women across state lines to engage in prostitution

8

using the following vehicles, registered in the name of a third party in Ohio: a white 2000 Cadillac DeVille bearing Ohio license DBS1569, VIN 1G6KD54Y3YU180964; and a blue 1992 Chevrolet Suburban bearing Ohio license DDU3699, VIN 1GNFK16K0NJ331897.

10.3    On or about August 2, 2001, the defendant **FRANKLIN ROBINSON** wire transferred $100.00 to the defendant **DEREK MAES** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.4    On or about December 6, 2003, the defendant **FRANKLIN ROBINSON** wire transferred $150.00 to unindicted co-conspirator Wayne Banks from Atlanta, Georgia to New Orleans, Louisiana.

10.5    On or about March 2004, the defendant **FRANKLIN ROBINSON** transported or caused to be transported an eighteen year-old woman from Harrisburg, Pennsylvania to Toledo, Ohio to work as a prostitute.

10.6    On or about June 27, 2004, the defendant **ATLAS AQUARIUS SIMPSON** paid bail for a woman working for

9

defendant **FRANKLIN ROBINSON** who had been arrested on prostitution charges.

10.7    In or about March 2005, the defendant **FRANKLIN ROBINSON** transported and caused to be transported four adults and two juveniles, from Toledo, Ohio, to Harrisburg, Pennsylvania, for the purpose of engaging in prostitution.

10.8    On or about August 4, 2005, the defendant **FRANKLIN ROBINSON** attempted to recruit a woman to work for him as a prostitute.  The defendant **FRANKLIN ROBINSON** stated, "We just ain't pimpin' and hoin' for nothing.  We pimpin' and hoin' for something... That's right you need to be f***ing with a pimp to know where the work is because a pimp knows where the work is all the time.  Bitch ain't got no pimp so she can't go many places because she might go to jail and she won't have no bail."

10.9    On or about April 28, 2005, the defendant **FRANKLIN ROBINSON** told **DEREK MAES** that he was using a woman as a prostitute, whom he referred to by the name of "Honey," "on the track" in Washington D.C.

10.10     On or about April 29, 2005 the defendant **DEREK MAES** sold a 17-year-old girl to **FRANKLIN ROBINSON** for approximately $650.00 for the purpose of using her as a prostitute.

10.11     On or about May 3, 2005, the defendant **FRANKLIN ROBINSON** stated to **DEREK MAES**, "I love pimping."

10.12     On or about May 24, 2005, the defendant **FRANKLIN ROBINSON** told **DEREK MAES** that one of his prostitutes had made only $50.00 and that he had started beating her, but had fractured his hand.

10.13     On or about July 21, 2005, the defendant **FRANKLIN ROBINSON** told an associate that he had beaten one of his women all morning, saying "Both my hands were swelled up because I beat the bitch so much."

10.14     On or about August 3, 2005, the defendant **FRANKLIN ROBINSON** called a service station about his vehicle and identified himself as "Michael Tucker."

10.15     On or about August 3, 2005, the defendant **FRANKLIN ROBINSON** stated to an associate, "I got a mother

11

f***ing n****r down here on the track f***ing with one of my bitches. I'm on my way down there now. . . . Call me when you pop back on the mother f***ing track, man, because I may have to cut the n****r's throat."

10.16    On or about August 4, 2005, the defendant **FRANKLIN ROBINSON** told the defendant **ERIC HAYES** that the District of Columbia police had arrested two of his prostitutes.

10.17    On or about April 23, 2001, the defendant **DEREK MAES** wire transferred $140.00 to the defendant **FRANKLIN ROBINSON** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.18    On or about March 2, 2002, the defendant **DEREK MAES** wire transferred $80.00 to the defendant **FRANKLIN ROBINSON** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.19    On or about June 28, 2003, the defendant **DEREK MAES** wire transferred $80.00 to the defendant **KENNETH BRITTON** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.20    In or about January of 2004 the defendant **DEREK MAES** traveled to Harrisburg, Pennsylvania and recruited an eighteen-year-old woman to work for him as a prostitute, and defendant **MELISSA JACOBS** trained that woman to be a prostitute. That woman then earned between $1,200 and $1,500 per night for two to three weeks, turning the money over to the defendant **DEREK MAES**.

10.21    On or about January 2004, the defendant **DEREK MAES** beat a women whom he had prostituted, breaking her nose.

10.22    On or about June 17, 2004, the defendant **ATLAS AQUARIUS SIMPSON** paid bail for unindicted co-conspirator D working for defendant **DEREK MAES** who had been arrested on prostitution charges.

10.23    On or about July 2004, the defendant **DEREK MAES** threatened the family of a woman whom he had prostituted.

10.24    On or about August 14, 2004, the defendant **DEREK MAES** wire transferred $200.00 to the defendant

**FRANKLIN ROBINSON** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.25    During January 2005, defendant **DEREK MAES** acquired Juvenile #1 from defendant **FRANKLIN ROBINSON** in Harrisburg, Pennsylvania.

10.26    During January 2005, defendant **DEREK MAES** engaged in sexual activity in Harrisburg, Pennsylvania with Juvenile #1 who at the time was under the age of eighteen years and put Juvenile #1 to work as a prostitute in Harrisburg, Pennsylvania, providing her with a false identification.

10.27    On or about April 23, 2005, the defendants **DEREK MAES** and **FRANKLIN ROBINSON** discussed the arrest of Juvenile #1 whom they both had used as a prostitute and agreed they would bail her out.

10.28    Between on or about April 23, 2005 and on or about May 7, 2005, the defendants **TERRANCE WILLIAMS** and **DEREK MAES** discussed the arrest of Juvenile #1 in Harrisburg, Pennsylvania.  The defendant **DEREK MAES** exhorted the

14

defendant **TERRANCE WILLIAMS** to "get her where she needs to be." Later, the defendant **TERRANCE WILLIAMS** informed the defendant **DEREK MAES** that the mother of Juvenile #1 that they had used as a prostitute was behind $1,600 on her mortgage. The defendants agreed that **TERRANCE WILLIAMS** should take Juvenile #1 to California to work as a prostitute. The defendants discussed the need for Juvenile #1's mother to coach Juvenile #1 before she testified. During that same conversation, the defendant **TERRANCE WILLIAMS** asked the defendant **DEREK MAES** for two additional girls. In a subsequent conversation, the defendants **TERRANCE WILLIAMS** and **DEREK MAES** expressed concern over Juvenile #1 identifying and implicating unindicted co-conspirator Wayne Banks and the defendants **SHIMON MAXWELL, DEREK MAES, FRANKLIN ROBINSON AND TERRANCE WILLIAMS** in prostitution activities involving Juvenile #1.

10.29    On or about May 7, 2005, the defendant **DEREK MAES** informed the defendant **FRANKLIN ROBINSON** of the contents of Juvenile #1's letter to the defendant **TERRANCE**

**WILLIAMS**. The defendant **DEREK MAES** stated, "We gonna all end up in jail." The defendant **FRANKLIN ROBINSON** discussed traveling to the west coast and minding "our P's and Q's." **FRANKLIN ROBINSON** discussed all of his prostitutes also having been identified by Juvenile #1. In another conversation that day, the defendants **DEREK MAES** and **MELISSA JACOBS** discussed their belief that they and prostitutes working for them had been identified by Juvenile #1 to law enforcement. The defendant **MELISSA JACOBS** stated, "Now we're all in the fed." The defendant **DEREK MAES** discussed his concern about returning to prison. **MELISSA JACOBS** stated "They can't touch you. Guess why they can't touch you? Every time she made a dime, who'd she give it to?"

10.30    During April 2005, defendant **MELISSA JACOBS** attempted to recruit a "renegade" prostitute (a prostitute not working for a pimp) for use in defendant **DEREK MAES'** prostitution organization and when that prostitute did not join **MAES'** organization quickly enough, the defendants **TANA ADKINS**

and **MELISSA JACOBS**, beat and robbed that prostitute at the Gable's Truck Stop in Harrisburg, Pennsylvania.

10.31    On April 13, 2005, the defendant **MELISSA JACOBS** reported to the defendant **DEREK MAES** that she had earned $1300.00 from her prostitution activity.

10.32    On or about August 27, 2004, the defendant **SHIMON MAXWELL** wire transferred $350.00 to the defendant **ERIC PENNINGTON** from Toledo, Ohio to Harrisburg, Pennsylvania.

10.33    In or about December 2004 the defendants **SHIMON MAXWELL** and **FRANKLIN ROBINSON** transported and caused to be transported Juvenile #1 from Michigan to Ohio to Arkansas to Ohio to Harrisburg, Pennsylvania to engage in prostitution.

10.34    The defendant **KENNETH BRITTON** recruited 16-year-old Juvenile #9 in or about 2001 to work for him in his interstate prostitution activities.

10.35    In or about March 2005, the defendant, **KENNETH BRITTON** traveled from Michigan to Harrisburg, Pennsylvania for the purpose of overseeing his prostitution enterprise. In Harrisburg, **KENNETH BRITTON** met with **TANA ADKINS**, his "bottom bitch."

10.36    On or about April 8, 2005, unindicted co-conspirator B wire transferred $100.00 to the defendant **KENNETH BRITTON** from Harrisburg, Pennsylvania to Detroit, Michigan.

10.37    On or about April 26, 2005, **KENNETH BRITTON** called **DEREK MAES** and requested that bail be posted for a prostitute that had been arrested in Harrisburg, Pennsylvania.

10.38    Between about August 2004 and October 2004, the defendant **TANA ADKINS** traveled from Harrisburg, Pennsylvania to Ohio and Indiana and back to Harrisburg, Pennsylvania to promote prostitution activities.

10.39    Between in or about May 2004 up to in or about August 2004, the defendant **KENNETH BRITTON** transported and caused to be transported from Toledo, Ohio to

18

Harrisburg, Pennsylvania a 22 year-old woman, who worked for the defendant **KENNETH BRITTON** as a prostitute in the Harrisburg, Pennsylvania area.

10.40    On or about April 12, 2005, the defendant **KENNETH BRITTON** discussed with the defendant **DEREK MAES** the fact that the two of them had been working prostitutes in Harrisburg for years.

10.41    On April 13, 2005, the defendant **KENNETH BRITTON** discussed with the defendant **DEREK MAES** the work schedules of the prostitutes and requiring the prostitutes to spend more time working at the truck stop.

10.42    On April 13, 2005, the defendant **KENNETH BRITTON** advised the defendant **DEREK MAES** that he had beaten one of his prostitutes for earning only $700.00 for a night's work.

10.43    On April 28, 2005, the defendant **KENNETH BRITTON** advised the defendant **DEREK MAES** that he intended to recruit prostitutes in Detroit, Michigan.

10.44    On April 29, 2005, the defendant **KENNETH BRITTON** argued with the defendant **DEREK MAES** over the sale of a prostitute to a third party for $600.00. **KENNETH BRITTON** stated that he had wanted the prostitute.

10.45    On May 8, 2005, the defendant **KENNETH BRITTON** discussed with the defendant **DEREK MAES** the prices that had been set for sexual services at the Gables Truck Stop in Harrisburg, Pennsylvania. They discussed that a prostitute was charging lower prices at the truck stop for sexual services.

10.46    On May 9, 2005, the defendant **KENNETH BRITTON** discussed with the defendant **DEREK MAES** that the defendant **TANA ADKINS** was within $800.00 of making $4,000.00 and that she would not "come home" until she had "the proper money."

10.47    On May 18, 2005, the defendant **KENNETH BRITTON** was advised by the defendant **DEREK MAES** that their prostitutes had been arrested. They discussed that being a pimp was "complicated as mother f***ing s**t."

10.48      In or about August of 2003, the defendant **DERICK PRICE** recruited 12-year-old Juvenile #2 to work as a prostitute.

10.49      On or about August of 2003 through August of 2004, the defendant **DERICK PRICE** engaged in sexual activity with 12-year-old Juvenile #2.

10.50      On or about August of 2003 through September 2004, the defendant **DERICK PRICE** transported and caused to be transported Juvenile #2 to work as a prostitute in Toledo, Ohio; Detroit, Michigan; San Antonio, Texas; New Orleans, Louisiana; Atlanta, Georgia; Harrisburg, Pennsylvania and Washington, D.C.

10.51      In or about July of 2004, the defendant **DERICK PRICE** transported or caused to be transported Juvenile #2 and two adults from Toledo, Ohio to Harrisburg, Pennsylvania to work as prostitutes.

10.52      From on or about July 30, 2004 through on or about August 19, 2004, Juvenile #2, using an alias, sent the

proceeds of her prostitution activities from Harrisburg, Pennsylvania, to the defendant, **DERICK PRICE**, in Toledo, Ohio.

10.53    On or about September 8, 2004, unindicted co-conspirator Wayne Banks wire transferred $200.00 to the defendant **DERICK PRICE** from Toledo, Ohio to Washington, DC.

10.54    In or about September, 2004, the defendant **DERICK PRICE** caused a Juvenile #2 and others to be transported from Toledo, Ohio to Washington, D.C. to work as prostitutes.

10.55    From in or about September 2004 to in or about March 2005, the defendant **DERICK PRICE** transported and caused to be transported Juvenile #3 and a 20-year-old woman working as a prostitute from Ohio to Pennsylvania to California.

10.56    On or about July 21, 2005, the defendants **DERICK PRICE** and **FRANKLIN ROBINSON** discussed steps they took to avoid their prostitution activities being detected such as registering cellular telephones and residences in the names of associates and relatives.

10.57    On or about August 28, 2004, the defendant **DEREK MAES** conspired with the defendants **ATLAS AQUARIUS SIMPSON** and **MELISSA JACOBS** to coerce and recruit Juvenile #2 in Harrisburg, Pennsylvania to work as a prostitute.

10.58    On or about August 28, 2004, the defendants **DEREK MAES** and **MELISSA JACOBS** provided Juvenile #2 with alcohol and participated in sex activities with her while in Harrisburg, Pennsylvania.

10.59    During September 2004, the defendants **DEREK MAES** and **MELISSA JACOBS** transported and caused to be transported Juvenile #2 from Harrisburg, Pennsylvania to Toledo, Ohio for the purpose of engaging in prostitution and engaged in sexual activities with Juvenile #2.

10.60    On or about July 31, 2002, the defendant **TERRANCE WILLIAMS** wire transferred $300.00 to the defendant **ROBERT SCOTT II** from Staunton, Virginia to Toledo, Ohio.

10.61    In or about January 2005, the defendant **TERRANCE WILLIAMS** traveled to Harrisburg, Pennsylvania to

recruit Juvenile #1 who at the time was under the age of 18 years, to work as a prostitute and transported her to Ohio for the same purpose.

10.62    On or about January, 2005, the defendant **TERRANCE WILLIAMS** transported or caused to be transported two women, including Juvenile #1, who at the time was under the age of eighteen years, to Florida to work as prostitutes.

10.63    On or about January 28, 2005 the defendant **TERRANCE WILLIAMS** rented Motel 6 Room #331, 200 Commerce Drive, New Cumberland, Pennsylvania for himself and Juvenile #1, whom he was prostituting, and engaged in sexual activity with Juvenile #1.

10.64    On or about April 22, 2005, the defendant **TERRANCE WILLIAMS** transported or caused to be transported Juvenile #1 who at the time was seventeen years old, from Toledo, Ohio to Harrisburg, Pennsylvania to work as a prostitute.

10.65    On or about April 22, 2005, the defendant **TERRANCE WILLIAMS** discussed with the defendant **DEREK**

**MAES** a plan to disguise Juvenile #1 from law enforcement by dyeing her hair and providing her with color contact lenses.

10.66    On or about April 22, 2005, the defendant **TERRANCE WILLIAMS** rented a room at the L&M Motel in West Hanover Township, Dauphin County, Pennsylvania, where he resided with Juvenile #1.

10.67    On or about May 28, 2005, the defendant **TERRANCE WILLIAMS** discussed with the defendant **DEREK MAES** sending prostitutes to work in Michigan, Illinois and Ohio because of heavy law enforcement presence in Harrisburg, Pennsylvania.  On or about June 5, 2005, the defendants **DEREK MAES** and **TERRANCE WILLIAMS** discussed selling women in Harrisburg, Pennsylvania; Detroit, Michigan; and Washington, D.C. The defendant **DEREK MAES** advised defendant **TERRANCE WILLIAMS** that the defendant **MELISSA JACOBS** had a date in Detroit on June 6, 2005 and then they would travel to Washington, D.C.

10.68    The defendant **KORY BARHAM** transported women across state lines to engage in prostitution using the following vehicle, registered in the name of a third party in Ohio:  a blue Oldsmobile Toronado (registered as a 1976 Cadillac, VIN 6D47S6Q186403) bearing Ohio license DBS-1318.

10.69    On or about February 24, 2004, the defendant **KORY BARHAM** wire transferred $1,200.00 to unindicted co-conspirator Wayne Banks from Toledo, Ohio to New Orleans, Louisiana.

10.70    On or about September 12, 2004, the defendant, **KORY BARHAM** traveled from the District of Columbia to Harrisburg, Pennsylvania with two prostitutes for the purpose of engaging in prostitution activity.

10.71    On or about September 12, 2004, the defendant, **KORY BARHAM** registered at the Travel Inn Room 209 located in New Cumberland, York County, Pennsylvania, under the fictitious name "Cuttlas Y. Blue."

10.72     In or about March 2005, the defendant **KORY BARHAM** transported and caused to be transported Juvenile #4 from Indianapolis, Indiana to Ontario, California for purposes of prostitution and subsequently turned Juvenile #4 over to the defendant **DERICK PRICE**.

10.73     On or about April 30, 2005, the defendant **FRANKLIN ROBINSON** gave a woman to the defendant **KORY BARHAM** to use as a prostitute.

10.74     On or about August 12, 2005, the defendant **FRANKLIN ROBINSON** spoke with the defendant **ERIC HAYES** who asked **ROBINSON** how much money he had made from prostituting (**ROBINSON's**) twelve women. **ROBINSON** replied that he had made a $10,000.00 down payment on a Cadillac and still had $17,000.00 left. The associate asked **ROBINSON** from where he had acquired the women. **ROBINSON** replied that he had recruited the women from Ohio, Georgia and New York.

10.75    In or about August 2003 the defendant **ERIC HAYES** traveled to Washington, DC and recruited a woman to work as a prostitute.

10.76    On or about December 5, 2003, the defendant **ERIC HAYES** wire transferred $200.00 to the defendant **FRANKLIN ROBINSON** from Las Vegas, Nevada to East Point, Georgia.

10.77    On or about October 8, 2004, the defendant **ERIC HAYES** wire transferred $50.00 to the defendant **SHIMON MAXWELL** from Indianapolis, Indiana to Harrisburg, Pennsylvania.

10.78    In or about August 2003 through July 2005, the defendant **ERIC HAYES** transported a woman from Washington, DC to Illinois, Texas, Indiana, Nevada, California, Michigan and Harrisburg, Pennsylvania, directed her to obtain false identification and used that woman as a prostitute, earning on average $500 to $1,000 per night.

10.79    From in or about August 2003 to in or about July 2005, the defendant **ERIC HAYES** operated Juvenile #5 as a prostitute.

10.80    On or about November 12, 2004 to November 25, 2004, the defendant **ERIC HAYES** rented a room at the Best Western, 150 Nationwide Drive, Harrisburg, Pennsylvania for the purpose of using women in prostitution.

10.81    In or about July 2005, the defendant **ERIC HAYES** used a woman as a prostitute in Harrisburg, Pennsylvania.

10.82    In 1991, the defendants **ROBERT SCOTT, SR.**, **DAVID POWERS** and **DEREK MAES** and unindicted co-conspirators C and D engaged together in prostitution activities in Tennessee.

10.83    On or about January 22, 2004, defendant **DEREK MAES** sent by Western Union wire transfer $50.00 to unidicted co-conspirator C from Harrisburg, Pennsylvania to Toledo, Ohio while the defendant, **ROBERT SCOTT, SR.** was in prison.

10.84    On or about April 5, 2004, defendant **DEREK MAES** sent by Western Union wire transfer $40.00 to unindicted

co-conspirator C from Harrisburg, Pennsylvania to Toledo, Ohio while the defendant **ROBERT SCOTT, SR.** was in prison.

10.85    On or about May 20, 2005, the defendant **ROBERT SCOTT, SR.** spoke by telephone with defendant **DEREK MAES** and requested **MAES** to send money to him in the name of unindicted co-conspirator C.

10.86    In or about April 2000, the defendant **ROBERT SCOTT, SR.** engaged in sexual activity with 12-year-old Juvenile #6 as payment for her grandfather's crack cocaine.

10.87    In or about November of 2003, the defendant **ROBERT SCOTT, SR.** transported and caused to be transported Juvenile #6 from Ohio to Harrisburg, Pennsylvania to work as a prostitute.

10.88    In or about November of 2003, the defendant **ROBERT SCOTT SR.** engaged in sexual activity with Juvenile #6 and provided Juvenile #6 with drugs in Harrisburg, Pennsylvania.

10.89    In or about November of 2003, the defendant **ROBERT SCOTT SR.** directed one of the women who was working

for him as a prostitute to instruct Juvenile #6 on how to prostitute herself.

10.90    In or about November of 2003, the defendant **ROBERT SCOTT SR.** transported and caused to be transported Juvenile #6 and another woman, for the purpose of working as prostitutes, from Harrisburg, Pennsylvania to Texarkana, Arkansas.

10.91    In or about November of 2003, the defendant **ROBERT SCOTT SR.** forced and coerced Juvenile #6 to engage in sexual activities with the defendant **ERIC PENNINGTON**, himself and two other adult prostitutes.

10.92    In or about November of 2003, the defendant **ROBERT SCOTT SR.** transported and caused to be transported the Juvenile #6 from Arkansas to Youngstown and Toledo Ohio, where he forced and coerced her to work as a prostitute.

10.93    On or about July 19, 2002, the defendant **ROBERT SCOTT II** wire transferred $500.00 to the defendant **TERRANCE WILLIAMS** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.94    On or about June 25, 2003, the defendant **ROBERT SCOTT II** wire transferred $200.00 to the defendant **ERIC PENNINGTON** from Indianapolis, Indiana to Toledo, Ohio.

10.95    On or about November 20 – 21, 2004, November 23 – 28, 2004, December 15 – 22, 2004 and December 28 – 30, 2004, the defendant **ROBERT SCOTT II** rented a room for himself and for women he was prostituting at the Quality Inn, 200 N. Mountain Road, Harrisburg, Pennsylvania.

10.96    On or about December 29, 2004, two women who were working as prostitutes for the defendant **ROBERT SCOTT II,** were arrested in Harrisburg, Pennsylvania for prostitution-related offenses.  The defendant **ROBERT SCOTT II** paid the bond and transported them from the Pennsylvania State Police.

10.97    On or about December 29, 2004, January 2, 2005, January 18, 2005, March 8, 2005, March 18, 2005, May 18, 2005, July 7, 2005 and July 21, 2005, a woman who was working for the defendant **ROBERT SCOTT II** was arrested in Harrisburg, Pennsylvania for prostitution-related offenses.

10.98    In or about July 2005, a prostitute working for the defendant **ROBERT SCOTT II** recruited and transported an adult female from Toledo, Ohio to Harrisburg, Pennsylvania where she was instructed on how to work as a prostitute.

10.99    On or about November 10, 2003, the defendant **ERIC PENNINGTON** wire transferred $50.00 to the defendant **ROBERT SCOTT, SR.** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.100    On or about December 30, 2003, the defendant **ERIC PENNINTON** wire transferred $150.00 to the defendant **SHIMON MAXWELL** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.101    On or about January 4, 2005, the defendant **ERIC PENNINGTON** wire transferred $85.00 to the defendant **SHIMON MAXWELL** from Harrisburg, Pennsylvania to Toledo, Ohio.

10.102    On or about July 31, 2005, the defendants **ERIC PENNINGTON** and **FRANKLIN ROBINSON** had a discussion

in which they discussed **PENNINGTON'S** prostitute working a "home date" for $800.

10.103    On or about July 31, 2005, the defendants **ERIC PENNINGTON** and **FRANKLIN ROBINSON** discussed **PENNINGTON** having transported his prostitute to work in New York. Later in the conversation, **ROBINSON** disussed travelling to Harrisburg the following day. **PENNINGTON** agreed because **ROBINSON** would not be "affecting his money."

10.104    On or about August 2, 2005, the defendants **ERIC PENNINGTON** and **FRANKLIN ROBINSON** discussed the law enforcement presence at the Gables Truck Stop in Harrisburg the previous night.

10.105    On or about May 11, 2004, a woman working for the defendant **DAVID POWERS** engaged in prostitution in the Harrisburg, Pennsylvania area.

10.106    On or about August 23, 2004, a woman working for the defendant **DAVID POWERS** engaged in prostitution in the Harrisburg, Pennsylvania area.

10.107    On or about August 23, 2004, the defendant **ATLAS AQUARIUS SIMPSON** was asked to pay bail for a prostitute working for defendant **DAVID POWERS**, but the bail was paid by a prostitute working for defendant **ERIC PENNINGTON**.

10.108    On or about September 22, 2004, the defendant **DAVID POWERS** wire transferred $50.00 to the defendant **KENNETH BRITTON** from Indianapolis, Indiana to Detroit, Michigan.

10.109    On or about April 13, 2005, the defendants **DEREK MAES**, **KENNETH BRITTON** and **MELISSA JACOBS** discussed the activities of women working as prostitutes for the defendant **DAVID POWERS**.

10.110    On or about April 14, 2005, the defendant **DAVID POWERS** spoke by telephone with the defendant **DEREK MAES** and asked him to contact the defendant **FRANKLIN ROBINSON** regarding a woman both of them were prostituting.

10.111    On or about July 12, 2005, a woman working for the defendant **DAVID POWERS** engaged in prostitution in the Harrisburg, Pennsylvania area.

10.112    On or about April 14, 2003, the defendant **DAWAN OLIVER** wire transferred $190.00 to unindicted co-conspirator A from Toledo, Ohio to Knoxville, Tennessee.

10.113    From in or about February 2004 to in or about March 2004, the defendant **DAWAN OLIVER** transported and caused to be transported an eighteen-year-old woman from Harrisburg, Pennsylvania to Youngstown, Ohio and back to Harrisburg, Pennsylvania for purposes of prostitution.

10.114    Between in or about February 2004 and July 2005, unidicted co-conspirator E, a woman prostituted by defendant **DAWAN OLIVER**, engaged in prostitution at the Gables Truck Stop in the Harrisburg, Pennsylvania area.

10.115    On or about April 27, 2005, the defendants **DEREK MAES, DAWAN OLIVER** and unindicted co-conspirator Wayne Banks discussed keeping witnesses out of reach of law

enforcement authorities by providing money to move them from place to place.

11.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, the allegations set forth in the succeeding counts of this Indictment.  Each count constitutes a separate overt act in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT TWO

12.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

13.    From in or about February 2001 up to on or about the date of this Indictment, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendant,

**FRANKLIN ROBINSON**
aka Michael Tucker aka "Silk" aka"Silky Red,"

**DEREK MAES** aka "Prince,"

**TERRANCE WILLIAMS**
aka "Sleazy T,"

**DERICK PRICE** aka "Coleone," aka
"Toone,"

**DAWAN OLIVER** aka "Thug," aka
"Finesse,"

**KENNETH BRITTON** aka "KB" aka
"Kalgon,"

**SHIMON MAXWELL** aka "Smooth"

**ERIC PENNINGTON** aka "Escalade,"

**ERIC HAYES** aka "International Ross,"
aka "Ross,"

**KORY BARHAM** aka "Cutty Blue,"
aka "Cuttlas Y. Blue,"

**ROBERT SCOTT, Sr.** aka "Big Rob,"

**ROBERT SCOTT II** aka "Lil' Rob aka "Clever,"

**DAVID POWERS**

**ATLAS AQUARIUS SIMPSON** aka "Large,"

**MELISSA JACOBS** aka "Storm," and

**TANA ADKINS** aka "Sapphire"

did travel, cause the travel and did aid and abet the travel in interstate commerce to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is prostitution, and thereafter did perform, cause to be performed and attempt to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of said unlawful activity.

All in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT THREE**

14.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and in Count One of this Indictment.

15.    In or about July 2004, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendant

### **DERICK PRICE**
aka "Coleone" aka "Toone"

knowingly transported and caused to be transported an individual, that is, Juvenile #2, who was at the time under the age of 16 years, in interstate commerce from Toledo, Ohio to Harrisburg, Pennsylvania with the intent that Juvenile #2 engage in prostitution and in sexual activity under such circumstances as would constitute a criminal offense by any person under 18 PA.C.S.A. §§3122.1 (statutory sexual assault) and 3125(8) (aggravated indecent assault).

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT FOUR

16.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

17.   From on or about December 2003 up to on or about September 2004 in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendant

**DERICK PRICE** aka "Coleone," aka "Toone"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, that is Juvenile #2, knowing that force, fraud and coercion would be used to cause Juvenile #2 to engage in a commercial sex act and knowing that Juvenile #2 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

41

THE GRAND JURY FURTHER CHARGES:

## COUNT FIVE

18.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

19.   From in or about August 2004 up to in or about September 2004 in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendant

**DEREK MAES** aka "Prince,"
**MELISSA JACOBS**, aka "Storm" and
**ATLAS AQUARIUS SIMPSON** aka "Large"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, that is Juvenile #2, knowing that force, fraud and coercion would be used to cause Juvenile #2 to engage in a commercial sex act and knowing that Juvenile #2 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

42

THE GRAND JURY FURTHER CHARGES:

## COUNT SIX

20.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

21.  In or about September 2004, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendants

**DEREK MAES**, aka "Prince,"
**MELISSA JACOBS**, aka "Storm" and
**ATLAS AQUARIUS SIMPSON** aka "Large,"

knowingly transported and caused to be transported an individual, that is, Juvenile #2, who was at the time under the age of 16  years, in interstate commerce from Harrisburg, Pennsylvania to Toledo, Ohio  with the intent that Juvenile #2 engage in prostitution and in sexual activity under such circumstances as would constitute a criminal offense by any person under 18 Pa.C.S.A. §§3122.1 (statutory sexual assault) and 3125(8) (aggravated indecent assault).

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT SEVEN

22.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

23.   From in or about January 2004 through in or about February 2004 in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendant

**DEREK MAES** aka "Prince,"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, knowing that force, fraud and coercion would be used to cause that person to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

44

THE GRAND JURY FURTHER CHARGES:

## COUNT EIGHT

24.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

25.    In or about January 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendants

**DEREK MAES**, aka "Prince,"
**TERRANCE WILLIAMS**, aka "Sleazy T," and
**FRANKLIN ROBINSON**
aka Michael Tucker aka "Silk" aka "Silky Red"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, that is Juvenile #1, knowing that force, fraud and coercion would be used to cause Juvenile #1 to engage in a commercial sex act and knowing that Juvenile #1 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

45

THE GRAND JURY FURTHER CHARGES:

## COUNT NINE

26.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

27.  In or about December 2004, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendants

**SHIMON MAXWELL**, aka "Smooth," and
**FRANKLIN ROBINSON**,
aka Michael Tucker aka "Silk," aka "Silky Red"

knowingly transported and caused to be transported an individual, that is, Juvenile #1, who was at the time under the age of 18 years, in interstate commerce from Michigan to Ohio to Arkansas to Ohio to Harrisburg, Pennsylvania with the intent that Juvenile #1 engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT TEN

28. The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

29. In or about January 2005, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendants

**DEREK MAES**, aka "Prince," and
**TERRANCE WILLIAMS**, aka "Sleazy T,"

knowingly transported and caused to be transported an individual, that is, Juvenile #1, who was at the time under the age of 18 years, in interstate commerce from Harrisburg, Pennsylvania to Toledo, Ohio with the intent that Juvenile #1 engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

47

THE GRAND JURY FURTHER CHARGES:

## COUNT ELEVEN

30.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

31.   In or about March 2005 in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere the defendant

### FRANKLIN ROBINSON
aka Michael Tucker aka "Silk" aka "Silky Red"

knowingly transported and caused to be transported an individual, that is, Juvenile #7, who was at the time under the age of 18 years, in interstate commerce from Toledo, Ohio to Harrisburg, Pennsylvania with the intent that Juvenile #7 engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

48

THE GRAND JURY FURTHER CHARGES:

## COUNT TWELVE

32.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

33.   In or about March 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendant

### FRANKLIN ROBINSON
aka Michael Tucker aka "Silk" aka "Silky Red,"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means persons, those being Juveniles #7 and #8 knowing that force, fraud and coercion would be used to cause Juveniles #7 and #8 to engage in a commercial sex act and knowing that Juveniles #7 and #8 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

49

THE GRAND JURY FURTHER CHARGES:

## **COUNT THIRTEEN**

34.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

35.   In or about March 2005, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendant

### **FRANKLIN ROBINSON**
aka Michael Tucker aka "Silk" aka "Silky Red"

knowingly transported and caused to be transported individuals, those being Juveniles #7 and #8, who were at the time under the age of 18 years, in interstate commerce from Toledo, Ohio to Harrisburg, Pennsylvania with the intent that Juveniles #7 and #8 engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT FOURTEEN

36.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

37.   In or about February 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

**SHIMON MAXWELL**, aka "Smooth"

knowingly transported and caused to be transported an individual, Juvinile #10, who was at the time under the age of 18 years, in interstate commerce from Toledo, Ohio to Harrisburg, Pennsylvania with the intent that the individual engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

51

THE GRAND JURY FURTHER CHARGES:

## **COUNT FIFTEEN**

38.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

39.   From in or about January 2005 through on or about February 2005 in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere the defendant

**SHIMON MAXWELL**, aka "Smooth"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, that is Juvenile #10, knowing that force, fraud and coercion would be used to cause Juvenile #10 to engage in a commercial sex act and knowing that Juvenile #10 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT SIXTEEN

40.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

41.    On or about March 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

### FRANKLIN ROBINSON
aka Michael Tucker aka "Silk," aka "Silky Red"

knowingly persuaded, induced, enticed and coerced and caused individuals, that is four women to travel in interstate commerce from Toledo, Ohio to Harrisburg, Pennsylvania to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

53

THE GRAND JURY FURTHER CHARGES:

## **COUNT SEVENTEEN**

42. The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

43. Between in or about July 2005 through in or about August 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

### **FRANKLIN ROBINSON**
aka Michael Tucker aka "Silk," aka "Silky Red"

knowingly persuaded, induced, enticed and coerced and caused an individual to repeatedly travel in interstate commerce between and among Harrisburg, Pennsylvania, the District of Columbia and Toledo, Ohio to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT EIGHTEEN**

44.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

45.  Between in or about December 2004 and in or about June 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

**ERIC HAYES**, aka "International Ross," aka "Ross" knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce between and among Nevada, Pennsylvania and the District of Columbia to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT NINETEEN**

46.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

47.   On or about September 2001, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

### **KENNETH BRITTON**, aka "KB"

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce from Indiana to Harrisburg, Pennsylvania to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT TWENTY**

48.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

49.    From in or about February 2002 to in or about April 2002, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

**DEREK MAES**, aka "Prince"

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce between and among Pennsylvania, Ohio and Florida to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURHTER CHARGES THAT:

## **COUNT TWENTY-ONE**

50.   On or about September 12, 2004, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

## **KORY BARHAM**

knowingly transported individuals, that is two women, in interstate commerce from the District of Columbia to Harrisburg, Pennsylvania with intent that such individuals engage in prostitution.

All in violation of Title 18, United States Code, Section 2421.

THE GRAND JURY FURTHER CHARGES:

## **COUNT TWENTY-TWO**

51.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

52.   In or about November 2003, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

**ROBERT SCOTT, SR.** aka "Big Rob"

knowingly, in and affecting interstate commerce, recruited, enticed, harbored, transported, provided and obtained by any means a person, that is Juvenile #6 knowing that force, fraud and coercion would be used to cause Juvenile #6 to engage in a commercial sex act and knowing that Juvenile #6 had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT TWENTY-THREE**

53.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and in Count One of this Indictment.

54.   In or about November 2003, in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania and elsewhere the defendant

### **ROBERT SCOTT, SR.** aka "Big Rob"

knowingly transported and caused to be transported an individual, that is, Juvenile #6 who was at the time under the age of 18 years, in interstate commerce from Harrisburg, Pennsylvania to Arkansas with the intent that Juvenile #6 engage in prostitution.

All in violation of Title 18, United States Code, Sections 2423(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## **COUNT TWENTY-FOUR**

55.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

56.   From in or about February 2004 through in or about March 2004, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

### **DAWAN OLIVER**
aka "Thug" aka "Finesse"

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce between Harrisburg, Pennsylvania and Youngstown, Ohio to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT TWENTY-FIVE

57.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

58.   In or about June 2004, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

## ROBERT SCOTT II aka "Lil' Rob"

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce from Youngstown, Ohio to Harrisburg, Pennsylvania to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT TWENTY-SIX

59.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

60.   In or about February 2005, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

**ROBERT SCOTT II** aka "Lil' Rob"

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce from Ohio to Harrisburg, Pennsylvania to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

63

THE GRAND JURY FURTHER CHARGES:

## COUNT TWENTY-SEVEN

61.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

62.   In or about November 2004, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

## DAVID POWERS

knowingly persuaded, induced, enticed and coerced and caused an individual to travel in interstate commerce from Ohio to Harrisburg, Pennsylvania to engage in prostitution.

All in violation of Title 18, United States Code, Sections 2422(a) and 2.

64

THE GRAND JURY FURTHER CHARGES:

## COUNT TWENTY-EIGHT

63.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

64.    From on or about January 2001 up to and including the date of the filing of this Indictment, in Dauphin and Cumberland Counties, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

### FRANKLIN ROBINSON
aka "Michael Tucker" aka "Silk" aka "Silky Red"

together and with others known and unknown to the Grand Jury, did unlawfully, willfully and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

64.1 Knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct and attempt to conduct a financial transaction (1) with the intent to promote the carrying on of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(A)(i); and (2) knowing that the transaction was designed in whole or in part to disguise the nature, location, source, ownership and

65

control of the proceeds of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(B)(i).

## MANNER AND MEANS

65.    It was a part of the conspiracy that the defendant **FRANKLIN ROBINSON** would and did act in the role of a "pimp," recruiting prostitutes, directing their activities and travel, disciplining them, setting prices for sexual services, working out agreements with other pimps for control over areas their prostitutes would engage in the sale of sexual services, among other things.

66.    It was further a part of the conspiracy that prostitutes who worked for the defendant **FRANKLIN ROBINSON**, having collected the funds derived from their prostitution activities, would deliver those funds to the defendant **FRANKLIN ROBINSON**, either directly, through intermediaries, or by Western Union wire transfer for the purpose of promoting, managing, establishing, carrying on and facilitating the promotion, management, establishment and carrying on of the prostitution activity.

67.    It was further a part of the conspiracy that the defendant **FRANKLIN ROBINSON** having received proceeds from his

prostitutes, either directly, through intermediaries, or by Western Union wire transfer, would use those funds to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the prostitution activity. For example, the funds were used to pay for travel between states for the women being used for prostitution, rental of hotel rooms, purchase of meals, payment of fees for the use of cellular phone by the pimp and the women being used in prostitution, payment of bail and fines for women arrested for prostitution-related offenses, payment of medical bills for the women and the purchase of clothing for the women to wear when prostituting themselves.

68.   It was further a part of the conspiracy that the defendant **FRANKLIN ROBINSON** and his prostitutes would use aliases to disguise both their identity and the illegal nature of the funds being wire transferred through Western Union.

## SPECIFIC CONDUCT

69.   In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known and unknown to the Grand Jury, committed and caused to be

committed the following conduct, among others, in the Middle District of Pennsylvania and elsewhere:

69.1    Between on or about January 2001 through May 2005, the defendant **FRANKLIN ROBINSON** wire transferred in excess of $19,900.00, which constituted proceeds from prostitution, through Western Union to pay bills and to send money to his associates in the prostitution business.

69.2    Between on or about April 2004 through August 2005, the defendant, **FRANKLIN ROBINSON**, using the alias "Michael Tucker," wire transferred in excess of $6,700.00, which constituted proceeds from prostitution, through Western Union to pay bills and to send money to his associates in the prostitution business.

69.3    Between on or about October 2001 through May 2005, **ROBINSON** caused wire transfers in excess of $10,300.00 to be sent in the name of a co-conspirator, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON** and his designees.

69.4     Between on or about February 2001 through February 2004, unindicted co-conspirator Derek Maes wire transferred in excess of $1,500.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON** and his designees.

69.5     Between on or about January 2004 through April 2005, an unindicted co-conspirator wire transferred $13,000.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON** and his designees.

69.6     Between on or about October 2002 through March 2004, an unindicted co-conspirator wire transferred in excess of $5,600.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON** and his designees.

69.7     In or about August 2001, an unindicted co-conspirator wire transferred $600.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON**.

69.8　　In or about August 2001, an unindicted co-conspirator wire transferred $999.99, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON**.

69.9　　In or about March 2002, an unindicted co-conspirator wire transferred $600.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON**.

69.10　　In or about December 2003, unindicted co-conspirator Eric Hayes wire transferred $200.00, which constituted proceeds from prostitution, through Western Union to the defendant **FRANKLIN ROBINSON**.

69.11　　In or about May 2004, an unindicted co-conspirator wire transferred $950.00, which constituted proceeds from prostitution, through Western Union to "Michael Tucker," which name is the alias of the defendant **FRANKLIN ROBINSON**.

69.12　　In or about July 2004, an unindicted co-conspirator wire transferred $1,000.00, which constituted proceeds

from prostitution, through Western Union to "Michael Tucker," which name is the alias of the defendant **FRANKLIN ROBINSON**.

69.13    As further specific acts, the Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in each of the succeeding counts of this Indictment.  Each count constitutes a separate act in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1956(h).

THE GRAND JURY FURTHER CHARGES:

## **COUNT TWENTY-NINE**

70.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

71.   From on or about January 2001 up to and including the date of the filing of this Indictment, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendants

**DEREK MAES** aka "Prince" and
**MELISSA JACOBS** aka "Storm"

together and with others known and unknown to the Grand Jury, did unlawfully, willfully and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

71.1 Knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) to conduct and attempt to conduct a financial transaction with the intent to promote the carrying on of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such indiviuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(A)(i); and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source,

the ownership and the control of the proceeds of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such indiviuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(B)(i);

## MANNER AND MEANS

72. It was a part of the conspiracy that the defendant **DEREK MAES** would and did act in the role of a "pimp," recruiting prostitutes, directing their activities and travel, disciplining them, setting prices for sexual services, working out agreements with other pimps for control over areas their prostitutes would engage in the sale of sexual services, among other things.

73. It was further a part of the conspiracy that the defendant **MELISSA JACOBS** would and did act in the role of a "bottom bitch," exercising authority and control over other prostitutes working for the defendant **DEREK MAES**, responsible for recruitment, training and collection of earnings, among other things.

74. It was further a part of the conspiracy that the defendant **MELISSA JACOBS**, having collected the funds derived from her and other women's prostitution activities, would deliver those funds to defendant **DEREK MAES**, either directly, through intermediaries,

73

or by Western Union wire transfer for the purpose of promoting, managing, establishing, carrying on and facilitating the promotion, management, establishment and carrying on of the prostitution activity.

75. It was further a part of the conspiracy that defendant **DEREK MAES** having received proceeds from defendant **MELISSA JACOBS** and other prostitutes, either directly, through intermediaries, or by Western Union wire transfer, would use those funds to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the prostitution activity. For example, the funds were used to pay for travel between states for the women being used for prostitution, rental of hotel rooms, purchase of meals, payment of fees for the use of cellular phone by the pimp and the women being used in prostitution, payment of bail and fines for women arrested for prostitution-related offenses, payment of medical bills for the women and the purchase of clothing for the women to wear when prostituting themselves.

76. It was further a part of the conspiracy that defendants **DEREK MAES**, **MELISSA JACOBS** and other prostitutes would use aliases to disguise both their identity and the illegal nature of the funds being wire transferred through Western Union.

## SPECIFIC ACTS

77. In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known and unknown to the Grand Jury, committed and caused to be committed the following conduct, among others, in the Middle District of Pennsylvania and elsewhere:

77.1    On or about May 4, 2005, **MELISSA JACOBS** sent by Western Union wire transfer $3,000.00 to **DEREK MAES** via Elizabeth Jacobs. This transaction originated In Harrisburg, Pennsylvania and was received at Toledo, Ohio.

77.2    On or about May 7, 2005, **MELISSA JACOBS**, using the alias "Melissa Black," sent by Western Union wire transfer $900.00 to **DEREK MAES** under the alias name "Jhon Black." This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

77.3     On or about May 19, 2005, **MELISSA JACOBS**, using the alias "Tiffany Jones," sent by Western Union wire transfer $700.00 to **DEREK MAES** through Elizabeth Jacobs. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

77.4     On or about May 25, 2005, **MELISSA JACOBS**, using the alias "Pam Jhonson," sent by Western Union wire transfer $900.00 to **DEREK MAES** under the alias name "James Jhonson." This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

77.5     On or about June 22, 2005, **MELISSA JACOBS**, using the alias "Melissa Johnson," sent by Western Union wire transfer $900.00 to **DEREK MAES** under the alias name "Jimmy Jhonson." This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

77.6     Between on or about January 2001 through May 2005 the defendant **DEREK MAES** wire transferred in excess of $12,400.00 in earnings from prostitution through Western Union to pay bills, including housing, automobile, clothing, food, hotel

rental and travel expenses and to send money to his associates in the prostitution business.

77.7    Between on or about July 2003 through on or about July 2005, the defendant **MELISSA JACOBS** wire transferred in excess of $57,600.00, which constituted proceeds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

77.8    Between on or about May 2001 through on or about  May 2005, an unindicted co-conspirator wire transferred in excess of $27,500.00, which constituted proceeds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

77.9    Between on or about February 2001 through on or about December 2003, an unindicted co-conspirator wire transferred in excess of $16,200.00, which constituted proceeds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

77.10    Between on or about November 2001 through on or about December 2003, an unindicted co-conspirator wire

transferred in excess of $60,200.00, which constituted procceds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

77.11   Between on or about January 2002 through on or about May 2002, an unindicted co-conspirator wire transferred in excess of in excess of $8,000.00, which constituted proceeds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

77.12   Between on or about May 2001 through on or about December 2002, unindicted co-conspirator Franklin Robinson wire transferred and caused to be wire transferred  in excess of $1,200.00, which constituted proceeds from prostitution, through Western Union to the defendant **DEREK MAES** and his designees.

All in violation of Title 18, United States Code, Section 1956(h).

THE GRAND JURY FURTHER CHARGES:

## COUNT THIRTY

78. The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

79. From on or about June 2001 up to and including the date of the filing of this Indictment, in Dauphin and Cumberland Counties, Pennsylvania, within the Middle District of Pennsylvania and elsewhere, the defendants

**KENNETH BRITTON** aka "KB" aka "Kalgon," and
**TANA ADKINS** aka "Sapphire"

together and with others known and unknown to the Grand Jury, did unlawfully, willfully and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

79.1 Knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) to conduct and attempt to conduct a financial transaction with the intent to promote the carrying on of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(A)(i); and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the

79

source, the ownership and the control of the proceeds of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(B)(i);

## MANNER AND MEANS

80.    It was a part of the conspiracy that the defendant **KENNETH BRITTON** would and did act in the role of a "pimp," recruiting prostitutes, directing their activities and travel, disciplining them, setting prices for sexual services, working out agreements with other pimps for control over areas their prostitutes would engage in the sale of sexual services, among other things.

81.    It was further a part of the conspiracy that the defendant **TANA ADKINS**, and other unindicted co-conspirators, having acquired funds from their prostitution activities, would deliver those funds to the defendant **KENNETH BRITTON**, either directly, through intermediaries, or by Western Union wire transfer for the purpose of promoting, managing, establishing, carrying on and facilitating the promotion, management, establishment and carrying on of the prostitution activity.

82.    It was further a part of the conspiracy that the defendant **KENNETH BRITTON** having received proceeds from the defendant

**TANA ADKINS** and other unindicted co-conspirators, either directly, through intermediaries, or by Western Union wire transfers, would use those funds to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the prostitution activity.  For example, the funds were used to pay for travel between states for the women being used for prostitution, rental of hotel rooms, purchase of meals, payment of fees for the use of cellular phone by the pimp and the women being used in prostitution, payment of bail and fines for women arrested for prostitution-related offenses, payment of medical bills for the women and the purchase of clothing for the women to wear when prostituting themselves.

83.    It was further a part of the conspiracy that defendants **KENNETH BRITTON** and **TANA ADKINS** would use aliases to disguise both their identity and the illegal nature of the funds being wire transferred through Western Union.

## SPECIFIC ACTS

84.    In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known

81

and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the Middle District of Pennsylvania and elsewhere:

84.1    On or about April 11, 2005, **TANA ADKINS** sent by Western Union wire transfer $500.00 to **KENNETH BRITTON**. This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.2    On or about May 9, 2005, **TANA ADKINS** sent by Western Union wire transfer $500.00 to **KENNETH BRITTON**. This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.3    On or about June 18, 2005, **TANA ADKINS** sent by Western Union wire transfer $200.00 to **KENNETH BRITTON**. This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.4    On or about June 20, 2005, **TANA ADKINS** sent by Western Union wire transfer $200.00 to **KENNETH BRITTON**. This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.5    On or about July 10, 2005, **TANA ADKINS** sent by Western Union wire transfer $500.00 to **KENNETH BRITTON**. This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.6    On or about July 11, 2005, **TANA ADKINS** using the alias "Charity Adkins", sent by Western Union wire transfer $800.00 to **KENNETH BRITTON** under the alias "Kennith Black." This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.7    On or about July 11, 2005, **TANA ADKINS** using the alias "Charity Adkins", sent by Western Union wire transfer $500.00 to **KENNETH BRITTON** under the alias "Jeremy Adkins." This transaction originated in Harrisburg, Pennsylvania and was received at Detroit, Michigan.

84.8    Between on or about June 2001 through on or about May 2005, the defendant **KENNETH BRITTON** wire transferred $1,300.00, which constituted proceeds from prostitution, through Western Union to pay bills and to send money to his associates in the prostitution business.

84.9     Between on or about June 2003 through on or about July 2005, the defendant **TANA ADKINS** wire transferred in excess of $15,800.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON** and his designees.

84.10     Between on or about June 2001 through on or about March 2003, an unindicted co-conspirator wire transferred in excess of $9,900.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

84.11     Between on or about June 2001 through on or about May 2005, an unindicted co-conspirator wire transferred in excess of $22,000.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

84.12     Between on or about October 2001 through on or about November 2001, an unindicted co-conspirator wire transferred $400.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

85. Between on or about November 2001 through on or about August 2002, an unindicted co-conspirator wire transferred in excess of $18,600.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

86. Between on or about September 2001 through on or about November 2001, an unindicted co-conspirator wire transferred in excess of $2,000.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

87. Between on or about January 2002 through on or about March 2002, an unindicted co-conspirator wire transferred in excess of $3,300.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

88. Between on or about July 2002 through on or about September 2002, an unindicted co-conspirator wire transferred in excess of $3,800.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

89.   During on or about July 2004, an unindicted co-conspirator wire transferred $1,300.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

90.   On or about June 2003 unindicted co-conspirator Derek Maes wire transferred $80.00, which constituted proceeds from prostitution, through Western Union to the defendant **KENNETH BRITTON**.

All in violation of Title 18, United States Code, Section 1956(h).

THE GRAND JURY FURTHER CHARGES:

## COUNT THIRTY-ONE

91.    The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations set forth in the Introduction and Count One of this Indictment.

92.    From on or about July 2004 through September 2004, in Dauphin County, Pennsylvania and within the Middle District of Pennsylvania and elsewhere, the defendant

## DERICK PRICE

together and with others known and unknown to the Grand Jury, did unlawfully, willfully and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

92.1 Knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) to conduct and attempt to conduct a financial transaction with the intent to promote the carrying on of a specified unlawful activity, that is, transporting individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. 1956(a)(1)(A)(i); and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of a specified unlawful activity, that is, transporting individuals in interstate

87

commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. §1956(a)(1)(B)(i);

## MANNER AND MEANS

93.   It was a part of the conspiracy that the defendant **DERICK PRICE** would and did act in the role of a "pimp," recruiting prostitutes, directing their activities and travel, disciplining them, setting prices for sexual services, working out agreements with other pimps for control over areas their prostitutes would engage in the sale of sexual services, among other things.

94.   It was further a part of the conspiracy that un-indicted co-conspirators, having collected the funds derived from their prostitution activities, would wire transfer those funds to the defendant **DERICK PRICE**, either directly or through intermediaries for the purpose of promoting, managing, establishing, carrying on and facilitating the promotion, management, establishment and carrying on of the prostitution activity.

95.   It was further a part of the conspiracy that the defendant **DERICK PRICE** having received the wire transfers from his prostitutes, either directly or through intermediaries, would use

those funds to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the prostitution activity. For example, the funds were used to pay for travel between states for the women being used for prostitution, rental of hotel rooms, purchase of meals, payment of fees for the use of cellular phone by the pimp and the women being used in prostitution, payment of bail and fines for women arrested for prostitution-related offenses, payment of medical bills for the women and the purchase of clothing for the women to wear when prostituting themselves.

96.   It was further a part of the conspiracy that, when a prostitute was arrested, the defendant **DERICK PRICE,** using third parties, would facilitate the payment of the bail and fine with the proceeds of prostitution.

97.   It was further a part of the conspiracy that the defendant **DERICK PRICE** caused Juvenile #2, a juvenile under the age of 14 years, to use aliases to disguise both her identity and the illegal nature of the funds being wire transferred through Western Union.

## SPECIFIC ACTS

98.   In furtherance of the conspiracy and to achieve the objects thereof, the defendant and his co-conspirators, known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the Middle District of Pennsylvania and elsewhere:

98.1    On or about July 29, 2004, unindicted coconspirator #1 sent by Western Union wire transfer $1,300.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.2    On or about July 30, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $750.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.3    On or about July 31, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $400.00 to **DERICK PRICE**. This transaction originated In Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.4    On or about August 2, 2004, unindicted coconspirator #1 sent by Western Union wire transfer $580.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.5    On or about August 2, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $550.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.6    On or about August 3, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $500.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.7    On or about August 3, 2004, Juvenile #2, using an alias, again sent by Western Union wire transfer $500.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.8    On or about August 6, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $600.00 to

**DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.9     On or about August 9, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $500.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.10     On or about August 9, 2004, Juvenile #2, using an alias, again sent by Western Union wire transfer $500.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.11     On or about August 11, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $900.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.12     On or about August 11, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $900.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.13    On or about August 14, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $500.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.14    On or about August 14, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $400.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.15    On or about August 16, 2004, unindicted coconspirator #2 sent by Western Union wire transfer $700.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.16    On or about August 19, 2004, Juvenile #2, using an alias, sent by Western Union wire transfer $600.00 to **DERICK PRICE**. This transaction originated in Harrisburg, Pennsylvania and was received at Toledo, Ohio.

98.17    On or about September 8, 2004, unindicted coconspirator Wayne Robert Banks, Jr. sent by Western Union wire

transfer $200.00 to **DERICK PRICE**.  This transaction originated in Toledo, Ohio and was received at Washington, D.C.

98.18    On or about September 14, 2004, unindicted coconspirator Wayne Robert Banks, Jr. sent by Western Union wire transfer $200.00 to **DERICK PRICE**.  This transaction originated in Atlanta, Georgia and was received at Washington, D.C.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THIRTY-TWO

### (MONEY LAUNDERING FORFEITURE)

99.   Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of one or more of the offenses set forth in Counts Twenty-eight through Thirty-one shall forfeit to the United States the following property:

99.1      All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:  1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

95

99.2    A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the entire amount involved in such offense.

100. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 99, if, by any act or omission of the defendant, the property described in paragraph 99, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Section 982(a)(1), and Rule 32.2(a), Federal Rules of Criminal Procedure.

## COUNT THIRTY-THREE

(CHILD EXPLOITATION FORFEITURE)

101. Upon conviction of one or more of the offenses alleged in Counts Three, Six, Nine through Eleven, Thirteen, Fourteen, Sixteen through Twenty-one and Twenty-three through Twenty-seven of this Indictment, each of the convicted defendants shall forfeit to the United States pursuant to 18 U.S.C. § 2253, all property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense; and all property, real and personal, used or intended to be used to commit or to promote the commission of the offense, including but not limited to the following:

101.1    MONEY JUDGMENT

A sum of money equal to $1,000,000.00 (one million dollars) in United States currency, representing the amount of proceeds obtained as a result of the offense(s).

101.2    REAL PROPERTY

All those lots or parcels of land, together with their buildings, appurtenances, improvements, fixtures, attachments and easements, located at the following addresses, more particularly described as follows:

101.2.1    1231 Bronson, Lot 20; Block 3, Lucas County, Toledo, Ohio 48608; Parcel Number 14-25174; (Franklin Robinson)

101.2.2    515 Cincinnati Street, Lot 5 in Block 120 in the Plat of North Toledo in accordance with the plat thereof recorded in Volume 25 of Plats, page 39; Lucas County, Toledo, Ohio 43611; Parcel No. 11-15484; (Franklin Robinson)

101.2.3    2204 Rosewood Avenue, Lucas County, Toledo, Ohio 43606; Parcel No.: 0608901; (Derick Price)

101.2.4    162 Palmer Street, Lucas County, Toledo, Ohio 43608; Parcel No.: 10-22071; (David Powers)

101.2.5    136 Austin Street, Lot 134 and the West 10 feet of Lot number 133 in E.D. Moore's Second Addition in accordance with Volume 8 of Plats, page 97; Lucas County, Toledo, Ohio 43608; Parcel No.: 10-22007; (Eric G. Hayes)

101.2.6    1310 Buckingham, Walbridges Lot 335, Lucas County, Toledo, Ohio 43615; Parcel No.: 1602101; (Eric G. Hayes)

101.2.7    956 Wright Avenue, Lot 84 in Fairfield Addition, Lucas County, Toledo, Ohio 43615; Parcel No. 05-01241; (Derek Maes)

101.2.8    1116 Hamilton, Walbridges Lot 240, Lucas County, Toledo, Ohio 43607; Parcel No.: 01741; (Derek Maes)

101.2.9    1229 Page Street, Elm Street Addition, Lot 44, Lucas County, Toledo, Ohio 43608; Parcel No. 0455527; (Eric G. Hayes)

101.2.10   3919 Emma Jean Road, Lucas County, Toledo, Ohio 43607; Parcel No.: 2010441; (Eric G. Hayes)

101.3    CONVEYANCES

101.3.1    1992 Ford Econoline Van, Ohio Registration DIB-3837,VIN 1FDEE14N3NHB40017

101.3.2    1997 Chevrolet Malibu, Ohio Registration DGQ-8120,VIN 1G1ND52M8V6135330

101.3.3    1992 Pontiac, Ohio Registration DGQ-6786, VIN 1G2NE14N9NC254948

101.3.4   1998 Lincoln Navigator, Nevada Registration 948-SWL, VIN 5LMPU28L7WLJ53701

101.3.5   2000 Mitsubishi, Ohio Registration H487152, VIN JA3AY11A7YU003202

101.3.6   1998 Ford, Ohio Registration DKM-8007, VIN 1FDEE14N6JHC11527

101.3.7   1996 Pontiac, Ohio Registration DMX-4408, VIN 1G2WJ12M5TF211035

101.3.8   1997 Cadillac, Ohio Registration BFC-6728, VIN 1G6KD54Y6VU229523

101.3.9   1995 Cadillac, Ohio Registration DKM-8550, VIN 1G6KD52B3SU305242

101.3.10   2004 Ford, Pennsylvania Registration FSD-0444, VIN 1FMZU73K44UB29743

101.3.11   1992 Chevrolet, Ohio Registration DDU-3699, VIN 1GNFK16KONJ331897

101.3.12   2000 Cadillac, Ohio Registration  DBS-1569, VIN 1G6KD54Y3YU180964

101.3.13   1999 Cadillac, Ohio Registration DY75NV, VIN 1G6KY5495XU940131

101.3.14   1998 Cadillac, Ohio Registration DAH-2869, VIN 1G6KD54Y5WU742375