**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No. 05-CR-443** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **FRANKLIN ROBINSON, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

I.   **INTRODUCTION**

In a superseding indictment filed December 8, 2005, Defendants in the above-captioned

cases were charged with various crimes involving the interstate transportation of adults and

minors for prostitution and money laundering.  Currently pending before the Court are a number

of ripe pretrial motions filed by several of the remaining Defendants in this case.  This

memorandum and order will dispose of all pending substantive pretrial motions with the

exception of the pending motions to suppress wiretap evidence obtained during the investigation

of this case.[1]  Where possible, the Court has addressed all motions seeking similar relief within a

---

[1]   In connection with such motions to suppress, in which nearly all of the remaining
defendants have joined, counsel for Defendant Robinson requested and received an extension of
time to submit detailed information to support the request that the Court hold a hearing in
accordance with Franks v. Delaware, 438 U.S. 154 (1978) ("Franks hearing"), on the moving
defendants' allegations that FBI agent John Stossel intentionally or recklessly omitted substantial
information from his affidavits offered in support of the warrants that defendants contend should
have been included and, had such information been included, would have resulted in the
authorizing judge finding that the Government had failed to demonstrate that one or more Title
III wiretaps were necessary to the investigation, and that he would have therefore likely denied
Government's application for authority to place wiretaps on the telephones of Franklin Robinson
and Derek Maes.  Subsequently, Defendants Robinson and Price submitted information in
support of their motions that the Court hold a Franks hearing.  The United States has filed a
response opposing the request, to which Defendant Robinson filed a reply.  The Court's decision
regarding Defendants' request for a Franks hearing will issue shortly after the instant
memorandum.

single section of this memorandum.

## II.   <u>DISCUSSION</u>

### A.   **Motions for Bills of Particulars**

Defendants Robinson and Britton have each filed motions seeking bills of particulars.
(Doc. Nos. 431, 465.)  The United States has opposed the motions, contending that the
indictment in this case contains far more detail than is required under the law and that places
Defendants on sufficient notice of the charges, and maintaining that  Defendants have requested
information that has already been furnished or which would constitute pretrial discovery to which
they are not entitled.  Additionally, the United States has expressed concern over protecting the
identities of the victims, particularly minors, who are expected to act as key witnesses in support
of the Government's case against Defendants.

Defendant Robinson has requested that the Court order the Government to provide the
names of the individuals, including women and minors, referenced in support of the overt acts
charged in Count 1, conspiracy to violate 18 U.S.C. §§ 2421, 2422(a), and 2423, as well as the
alleged methods of transportation and identity of unindicted co-conspirators that are listed in
Counts 10, 14, 15, 18 through 27, and 29, 30, and 31; (2) the names of the women and/or minors
referenced throughout the Superseding Indictment; (3) the specific kind of force, fraud, or
coercion that was allegedly used in connection with the crimes charged in Counts 8 and 12; (4)
the method of transporting women and/or minors with respect to the crimes charged in Counts 9
and 13; and (5) the identification of unindicted co-conspirators mentioned in Count 28.

Defendant Britton broadly requests disclosure of entire categories of information,
including the location and time of the alleged acts charged against him and the identity of "any

other party or witness involved in the specific acts alleged, including, but not limited to, the

unnamed juveniles and the unindicted co-conspirator(s)."  (Doc. No. 465, at 3.)

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes a court to direct the

Government to file a bill of particulars.  Fed. R. Crim. P. 7(f).  The purpose of a bill of

particulars is "to inform the defendant of the nature of the charges brought against him, to

adequately prepare his defense, to avoid surprise during the trial and to protect him against a

second prosecution for an inadequately described offense."  United States v. Urban, 404 F.3d

754, 771 (3d Cir. 2004) (quoting United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1972)).

"Only where an indictment fails to perform these functions, and thereby 'significantly impairs the

defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial,'" will

the Court find that a bill of particulars should be issued.  Id. at 771-72 (quoting United States v.

Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989)).  The Third Circuit has noted that the purpose of a bill

of particulars is not to permit "wholesale discovery of the Government's evidence" in advance of

trial.  United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975).  The Court has also found that

an indictment charging a statutory crime is sufficient if it substantially follows the language of

the criminal statute, provided that its generality does not prejudice a defendant in preparing his

defense nor endanger his constitutional guarantee against double jeopardy.  See United States v.

Addonizio, 451 F.2d 49, 58 n.7 (3d Cir. 1971); see also United States v. Eufrasio, 935 F.2d 553,

575 (3d Cir. 1991) (same).  The Third Circuit has recently emphasized that the need for a bill of

particulars is obviated in those cases where the Government supplements a detailed charging

document with substantial discovery.  Urban, 404 F.3d at 772.  Particularly applicable to this

case, the Third Circuit has emphasized that "[a] bill of particulars, unlike discovery, is not

3

intended to provide the defendant with the fruits of the government investigation. . . . Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted).  In ruling on a request for a bill of particulars, the court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment.  United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972).

With the foregoing considerations in mind, the Court concludes that Defendants have not demonstrated the need for a bill of particulars in this case.  The indictment itself is especially detailed and provides greater information than is required in a charging document.  Although Defendants have requested further disclosure regarding overt acts that are alleged to have been committed in furtherance of the charged conspiracies, the United States rightly points out that it is required only to allege and prove one overt act committed by one co-conspirator in order to prevail on a charge of conspiracy; moreover, the indictment includes scores of overt acts that are alleged to have been committed pursuant to the conspiracy charged in Count I and incorporated in Counts 28 through 31.

The Government has additionally represented that it has provided all Defendants in this case with substantial discovery in advance of trial that will enable Defendants to prepare their defenses to the charges in this case.  The Court does not conclude that the discovery already provided to Defendants, as represented by the Government, is inadequate to prepare a defense to the charges such as to militate in favor of a supplemental bill of particulars.  Although Defendants have additionally requested the identities of the women, minor girls, and other

4

individuals referenced throughout the indictment, the Court agrees that use of a bill of particulars

for such information is both inappropriate and unnecessary in light of the information already

provided.  The Government has also represented that it has provided information regarding adult

victims and witnesses that are involved in this case, and has further represented that it will

voluntarily provide the names of Juveniles 1 through 10 under seal pursuant to 18 U.S.C. §

3509(d),[2] and therefore the Court finds Defendants' request for detailed information in this

regard should be considered moot.

Accordingly, upon consideration of the information contained in the superseding

indictment, the substantial discovery that has been made available, and Defendants' failure to

persuade the Court that a bill of particulars is either necessary or warranted in this case, the

motions for bills of particulars will be denied.

### B.    Motions to Sever

Defendants Robert Scott, Sr., and Derick Price have each moved to sever their cases from

those of their alleged co-conspirators.[3]  (Doc. Nos. 415, 453.)  The United States opposes

severance and urges the Court to deny the motions, noting that this Court previously denied

Defendant Eric Pennington's motion to sever, and in so doing addressed the standards for joinder

---

[2]  To the extent this information has not yet been provided to Defendants' counsel, the
Court will enter an order grant the Government's previously filed motion for permission to
produce this information subject to a requirement that counsel ensure that the information
regarding alleged minor victims and witnesses is maintained in confidence in accordance with 18
U.S.C. § 3509(d).  (Doc. No. 498.)

[3]  Defendant Atlas Aquarius Simpson also moved to sever his case from those of his co-
defendants.  (Doc. No. 449.)  Simpson subsequently entered into a plea agreement with the
United States by which he has agreed to plead guilty to Counts 1 and 2 of the superseding
indictment.  As noted below, the Court will deny Simpson's motion for severance, as well as his
other pending pretrial motions, as moot.

and severance under Rules 8 and 14 of the Federal Rule of Civil Procedure.  Finding it equally

applicable to the instant motions, the Court repeats that analysis below.

Rule 8(b) of the Federal Rules Rule 8(b) of the Federal Rules of Criminal Procedure

provides as follows:

> The indictment or information may charge 2 or more defendants if
> they are alleged to have participated in the same act or transaction,
> or in the same series of acts or transactions, constituting an offense
> or offenses.  The defendants may be charged in one or more counts
> together or  separately.  All defendants need not be charged in each
> count.

Fed. R. Crim. P. 8(b).  The Supreme Court has stated that "[t]here is a preference in the federal

system for joint trials of defendants who are indicted together."  Zafiro v. United States, 506 U.S.

534, 537 (1993).  This preference for joinder "promote[s] efficiency and serve[s] the interest of

justice by avoiding the scandal and inequity of inconsistent verdicts."  Id. at 537 (quoting

Richardson v. Marsh, 481 U.S. 200, 210 (1987)); see also United States v. Eufrasio, 935 F.2d

553, 568 (3d Cir. 1991) ("The public interest in judicial economy favors joint trials where the

same evidence would be presented at separate trials of defendants charged with a single

conspiracy.").  When considering a motion to sever, the Third Circuit has instructed that

"participants in a single conspiracy should ordinarily be tried jointly as long as the jury can

reasonably be expected to compartmentalize the evidence as it relates to separate defendants and

notwithstanding that the evidence against one codefendant is more damaging than that against

another."  United States v. Jackson, 649 F.2d 967, 973 (3d Cir. 1981) (internal quotation marks

and citations omitted).

Notwithstanding the preference for joint trials, the Federal Rules of Criminal Procedure

provide for severance in limited circumstances in order to avoid substantial prejudice to a criminal defendant.  Rule 14 of the Federal Rules of Criminal Procedure provides, in relevant part: "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  Where defendants have been properly joined pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, "a District Court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or would prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.  The party seeking severance bears the burden of demonstrating that a joint trial will cause clear and substantial prejudice, resulting in a manifestly unfair trial.  United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996).  The Supreme Court has noted that although separate trials may be warranted where the risk of prejudice is substantial, in many cases "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539.  See also Voigt, 89 F.3d at 1096 (noting effectiveness of limiting instruction in which court directed jury to consider each count separately); United States v. Console, 13 F.3d 641, 655-56 (3d Cir. 1993) (limiting instructions can help the jury to "compartmentalize" the evidence as it relates to each defendant).

In the instant case, the United States has asserted that each of the moving Defendants have been charged as co-conspirators in a multi-state prostitution scheme, and the Government has pointed to specific allegations of each Defendant's alleged conduct in furtherance of this conspiracy.  Additionally, the United States notes persuasively that severing each of the

7

Defendant's cases would lead to a waste of judicial resources and increase the burden on witnesses, which in this case is expected to include certain witnesses that are particularly vulnerable.  Furthermore, neither Defendant has demonstrated clear and substantial prejudice will result from having his case joined with that of his co-defendants'.  For all of the foregoing reasons, the motions to sever will be denied.

### C.    Motions to Strike Aliases and other Alleged Surplusage

Defendants Price, Williams, and Hayes have each moved to strike their aliases from the indictment.[4]  (Doc. Nos. 455, 174, 478.)  In the indictment, Derick Price is referred to as "Coleone" and "Toone," Terrance Williams is referred to as "Sleazy T," and Eric Hayes is referred to as both "International Ross" and "Ross."  Defendants contend that use of the foregoing alleged aliases will unduly prejudice them at trial by causing them to appear suspicious to a jury, and they assert that the United States has no legitimate need to introduce the aliases in this case.  In response, the United States contends that the aliases are highly relevant to these cases because the Defendants were allegedly often not referred to by their given names, but instead used their aliases or street monikers as their primary identification with associates and prostitutes.  For example, the United States asserts that Defendant Price required prostitutes working for him to have his alias "Coleone" tattooed on their bodies as a sign of ownership.  In addition, the Government maintains that certain prostitutes will testify at trial that they knew one or more of the Defendants only by their aliases.  Accordingly, the Government contends that

---

[4]  Derek Maes also filed a motion to strike the indictment's reference to his nickname, "Prince."  (Doc. No. 442.)  Defendant Maes subsequently pleaded guilty to Counts 1, 2, and 7 of the superseding indictment pursuant to a plea agreement with the United States, and his motion to strike his alias will accordingly be denied as moot.

inclusion of Defendants' aliases is highly relevant to establish the facts of the case with clarity and to provide meaning to the numerous recorded conversations that the United States expects to introduce as evidence in this case.  Accordingly, the Government maintains that the aliases in question are not surplusage, but instead constitute materially relevant facts in this case.

Rule 7(d) of the Federal Rules of Criminal Procedure authorizes a court to strike surplusage from an indictment.  Fed. R. Crim. P. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information.").  The Third Circuit considers an alias surplusage that may be stricken where such alias does not serve a useful purpose, such as to identify the accused or protect him from double jeopardy.  United States v. Beedle, 463 F.2d 721, 725 (3d Cir. 1972) ("The practice of allowing aliases to exist has been condemned where . . . they serve no useful purpose either to identify the accused or to protect him from double jeopardy."). In Beedle, the alias served "no useful purpose" because it resulted solely from a misspelling made by the Assistant United States Attorney.  Id.  In contrast, "an alias in an indictment, even one with strong negative connotations, is permissible if it is needed to connect the accused to the acts charged."  United States v. Vastola, 899 F.2d 211, 232 (3d Cir. 1990), rev'd on other grounds, 497 U.S. 1001 (1990).

In light of these considerations, and the United States' representation that the aliases in question are relevant in this case to aid in the identification of the Defendants, to provide proper context for the wiretap conversations expected to be introduced at trial, and to establish Defendants' connections to the charged crimes, the Court finds that the motions to strike the aliases should be denied.  However, if the United States fails to offer proof relating to the aliases that have been listed and which the United States contends are relevant and necessary to

prosecute the charges against Defendants, the motions may be renewed and, if appropriate, the

aliases struck, and an appropriate precautionary instruction given to the jury.  United States v.

Addonizio, 313 F. Supp. 486, 491 (D.N.J. 1970); see also United States v. Harriston, 329 F.3d

779, 792 (11th Cir. 2003) (suggesting redaction as a curative measure when trial witnesses do not

make reference to an alias).

In addition, Defendant Price moved to strike the words "among others" and "among other

things" that are contained in paragraphs 10 and 93 of the superseding indictment, contending that

inclusion of these words was unduly prejudicial because it would allow a jury to infer that Price

is accused of crimes not charged in this case.  Similarly, Hayes has moved to strike use of the

words "among others" as set forth in paragraphs 10 and 98 of the superseding indictment,

arguing that the words are irrelevant and prejudicial.  The Court does not agree that the inclusion

of this language is unduly prejudicial and will therefore not order it stricken from the indictment.

For all of the foregoing reasons, the motions to strike use of Defendants alleged aliases

and other surplusage will be denied.

### D.    Derick Price's Motion to Dismiss Count 31

Defendant Price has moved to dismiss Count 31 of the superseding indictment, which

charges him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.

(Doc. No. 452.)  The operative provisions of the money laundering statute that Price is charged

with violating are 18 U.S.C. §§ 1956(a)(1)(i) and (a)(1)(B)(i), which were charged in the

indictment as follows:

> Knowing that the property involved in a financial transaction
> represented the proceeds of some form of unlawful activity, (1) to
> conduct and attempt to conduct a financial transaction with the

> intent to promote the carrying on of a specified unlawful activity,
> that is, transporting individuals in interstate commerce with the
> intent that such individuals engage in prostitution, in violation of
> 18 U.S.C. § 1956(a)(1)(i); and (2) knowing that the transaction was
> designed in whole or in part to conceal and disguise the nature, the
> location, the source, the ownership and the control of the proceeds
> of a specified and unlawful activity, that is, transporting
> individuals in interstate commerce with intent that such individuals
> engage in prostitution, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

(Superseding Indictment, at 70-71.)

Price contends that because the Western Union money transfers are alleged to have taken place during the course of the underlying prostitution conspiracy, the transactions must be considered a part of the prostitution activities and therefore were subsumed into the prostitution conspiracy.  Essentially, Price is arguing that he cannot be separately liable for money laundering because the alleged money laundering took place during the allegedly ongoing prostitution conspiracy.  Accordingly, Price moves for dismissal of the money laundering count set forth in Count 31 of the superseding indictment.  Price offers no substantive legal support for his argument, and the Court finds it to be legally incorrect.

In United States v. Omoruyi, 260 F.3d 291 (3d Cir. 2001), the Third Circuit upheld a defendant's conviction for both money laundering and mail fraud, rejecting the defendant's argument that the money laundering was a crime indistinct from the mail fraud of which the defendant was also convicted.  In so doing, the court made clear that for purposes of money laundering, "proceeds are derived from an already completed offense or a completed phase of an ongoing offense."  Id. at 296 (emphasis added); see also United States v. Abuhouran, 162 F.3d 230, 233 (3d Cir. 1998) ("The money laundering statute is not simply the addition of a further penalty to a criminal deed; it is a prohibition of processing the fruits of a crime or of a completed

phase of an ongoing offense.") (emphasis added) (citing United States v. Conley, 37 F.3d 970, 979 (3d Cir. 1994)).

In this case, the Court finds unpersuasive Defendant Price's contention that because he was charged with an ongoing conspiracy to commit interstate prostitution, and that certain of the proceeds allegedly derived from this conspiracy were wired or otherwise laundered during the course of the conspiracy, he is therefore immune from prosecution for laundering these proceeds because the prostitution conspiracy had not concluded. The Government has charged Defendant Price with laundering the proceeds of illegal activity – namely, proceeds derived from activities related to prostitution. The Court agrees with the Government that each separate use of a Western Union facility to wire proceeds derived from prostitution-related activities may be charged and were not, as Defendant erroneously asserts, "subsumed" into the prostitution conspiracy that had yet to conclude. Accordingly, Defendant Price's motion to dismiss Count 31 will be denied.

**E.** **Derick Price's Motion to Suppress Statements**

Defendant Price has also moved to suppress certain statements he allegedly made to law enforcement officers during the course of his arrest in Pomona, California, on March 8, 2006, after he had become a fugitive. The United States has agreed that it will not offer these statements in its case-in-chief, and therefore urges the Court to deny Price's motion as moot.[5]

---

[5] The Government notes that law enforcement officers seized several items from Price during the course of his arrest, including a series of Western Union money transfers that Price sent to an unindicted co-conspirator and to a known prostitute on which Price used fictitious names. The Government underscores that Price has not moved to suppress the physical evidence seized in the course of the arrest and that it intends to use the seized items at trial. It further represents that Price's counsel has been provided copies of these seized items.

Subject to the United States' agreement not to introduce evidence of Price's statements made during the course of his arrest as part of its case-in-chief, the motion to suppress the statements will be denied as moot.

### F.      Robert Scott, Sr.'s, Motion to Dismiss Indictment

Defendant Robert Scott, Sr., has moved to dismiss the charges against him in the superseding indictment on the grounds that prosecution for the crimes charged violates his right under the Fifth Amendment to be free from double jeopardy.  (Doc. No. 417.)  In support of this argument, Scott notes that on December 6, 2003, he was arrested in Lucas County, Ohio, and charged with kidnaping, unlawful sexual contact with a minor, and promoting prostitution.  On April 12, 2004, he pleaded guilty to promoting prostitution and was sentenced to six months imprisonment.  Scott believes that the current federal charges against him constitute double jeopardy, apparently because the allegations contained in the superseding indictment are similar to those charged under state law in Ohio in 2003, and because he believes the offenses constitute the same act because the juvenile involved in the 2003 events was the same juvenile involved in the events relevant to the federal charges.  He is mistaken.  As the Government's brief correctly notes, established case law makes it clear that Defendant's subsequent federal prosecution does not constitute double jeopardy because, among other reasons, the dual-sovereignty doctrine permits the federal government to prosecute a defendant for violation of federal law, even if such defendant has been prosecuted for the same criminal acts under state law.[6]

---

[6]  Although the Court finds that Defendant Scott's motion can be disposed of on the grounds that the dual-sovereignty doctrine provides that the states and federal governments have distinct interests in our federal system of government, and may therefore lawfully prosecute a defendant for the same conduct without running afoul of the Fifth Amendment's prohibition against double jeopardy, the Court notes that it is not clear that Defendant Scott is, in fact, being

The Fifth Amendment to the United States Constitution provides, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const., amend. V.  The United States Supreme Court has explained that the constitutional guarantee against double jeopardy consists of three separate constitutional protections:  "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

Notwithstanding the constitutional guarantee against double jeopardy, the Supreme Court has recognized an exception to the guarantee that emanates from our federal system of government.  This exception, commonly referred to as the dual-sovereignty doctrine, allows federal prosecutors to prosecute a defendant on federal charges if there exists a federal interest that was left unvindicated by a prior state prosecution, notwithstanding the fact that a defendant had already been charged and tried in state court.  Abbate v. United States, 359 U.S. 187 (1959); Bartkus v. Illinois, 359 U.S. 121 (1959).  As Defendant notes, judges in the United States Court of Appeals for the Third Circuit have questioned and criticized the dual-sovereignty doctrine, but have recognized that only the Supreme Court can overturn the rule, and the Supreme Court has not yet done so.  See United States v. Wilson, 413 F.3d 382, 394 (3d Cir. 2005) (Aldisert, J., dissenting); United States v. Grimes, 641 F.2d 96, 104 (3d Cir. 1981).

Notwithstanding Scott's determined effort to persuade the Court that the dual-sovereignty

―――――――――――――

prosecuted for identical crimes for which he has already been convicted.  The mere fact that the same juvenile victim was involved in both the Ohio offense and the federal charge does not, by itself, give rise to a double jeopardy claim, and the Court notes that the state and federal offenses require proof of different facts.

doctrine has been tacitly overruled and should no longer be followed, the Court cannot agree.

For this reason, the Court finds that Defendant Scott's motion to dismiss the charges against him

contained in the superseding indictment on double jeopardy grounds must be denied.

      **G.**    **Defendants Robinson's and Williams's Motions to Dismiss Multiplicitous Counts**

      In Count 8 of the superseding indictment, Defendant Williams is charged with a violation

of 18 U.S.C. § 1591, which proscribes "sex trafficking of children or by force, fraud, or

coercion." 18 U.S.C. § 1591. In Count 10 of the superseding indictment, Williams is charged

with violating 18 U.S.C. § 2423(a), which provides criminal penalties for transportation of a

minor in interstate commerce with intent that the minor engage in prostitution or other criminal

sexual activity. Williams has moved to dismiss Count 10, contending that "the alleged acts

underlying [Counts 8 and 10] are the same." On the basis of this conclusion, Williams argues that

the charges are multiplicitous and that if he were convicted under both counts, his Fifth

Amendment guarantee against being subjected to double jeopardy for the same crime would be

violated. Similarly, Defendant Robinson is charged in Count 12 with violating 18 U.S.C. §§

1591 and 2 and in Count 13 he is charged with violating 18 U.S.C. §§ 2423(a) and 2 for

apparently the same conduct. He has moved to dismiss Count 13 as a multiplicitous and lesser

included offense to that charged in Count 12. (Doc. No. 372.)

      In general, charging documents that charge a single offense in multiple counts are

multiplicitous and therefore impermissible. <u>United States. v. Carter</u>, 576 F.2d 1061, 1064 (3d

Cir. 1978). "Offenses are multiplicitous [when] they proscribe the same conduct, and hence that

conviction for both violates the Double Jeopardy Clause . . . ." <u>United States v. Betancourt</u>, 116

F.3d 74, 75 (3d Cir. 1997).  In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme

Court established the test for determining whether counts are multiplicitous, which requires

courts to consider whether the provisions of each statute that a defendant is charged with

violating require proof of a fact that the other does not:  "A single act may be an offense against

two statutes; and if each statute requires proof of an additional fact which the other does not, an

acquittal or conviction under either statute does not exempt the defendant from prosecution and

punishment under the other."  Id. at 304; see also United States v. Jackson, 443 F.3d 293, 301 (3d

Cir. 2006) (citing Blockburger for the proposition that "[i]f, however, either offense does not

contain an element not contained in the other, the offenses are considered the same offense for

double jeopardy purposes.").

      Robinson and Williams are charged in Counts 13 and 8, respectively, with violating 18

U.S.C. § 1591, which provides as follows:

> (a) Whoever knowingly –
>     (1) in or affecting interstate or foreign commerce, or within
> the special maritime and territorial jurisdiction of the United
> States, recruits, entices, harbors, transports, provides, or obtains by
> any means a person; or
>     (2) benefits, financially or by receiving anything of value,
> from participation in a venture which he has engaged in an act
> described in violation of paragraph (1),
>
> knowing that force, fraud, or coercion described in subsection
> (c)(2) will be used to cause the person to engage in a commercial
> sex act, or that the person has not attained the age of 18 years and
> will be caused to engage in a commercial sex act, shall be punished
> as provided in subsection (b).

18 U.S.C. § 1591.

      In contrast, Robinson and Williams are charged in Counts 13 and 10, respectively, with

16

violating 18 U.S.C. § 2423(a), which provides as follows:

> (a) Transportation with intent to engage in criminal sexual activity.
> A person who knowingly transports an individual who has not
> attained the age of 18 years in interstate or foreign commerce, or in
> any commonwealth, territory or possession of the United States,
> with intent that the individual engage in prostitution, or in any
> sexual activity for which any person can be charged with a criminal
> offense, shall be fined under this title and imprisoned not less than
> 10 years or for life.

18 U.S.C. § 2423(a).

Defendant Williams asserts that "[a]lthough Section 1591 has a number of elements, i.e.,

force, fraud and coercion, not present in 18 U.S.C. § 2423(a), the latter statute has no element not

contained in the former."  (Doc. No. 512, at 4.)  For this reason, Defendant submits that "one

could not commit a violation of Section 1591 without also committing a violation of 2423(a)."

(Id.)  For his part, Robinson also argues that the Blockburger test is not satisfied because Count

13 does not require proof of a fact that Count 12 does not.  Although the Court finds this to

present a very close call – which the Government appears to concede – a careful analysis of 18

U.S.C. §§ 1591 and 2423(a) reveals that each statute requires proof of a different factual element

that the other does not, specifically with respect to the different mens rea required to support a

conviction under both statutes.

To support a conviction under 18 U.S.C. § 2423(a), the Government must prove, inter

alia, that a defendant who transports a minor in interstate commerce specifically intended that the

minor engage in prostitution or illicit sexual activity.  See 18 U.S.C. § 2423(a) ("knowingly

transports an individual who has not attained the age of 18 years . . . with intent that the

individual engage in prostitution, or in any sexual activity for which any person can be charged

17

with a criminal offense . . . .").   In contrast, 18 U.S.C. § 1591 requires that the Government

prove that a defendant knew that a minor "would be caused to engage in a commercial sex act."

See 18 U.S.C. § 1591 ("knowing that . . . the person has not attained the age of 18 years and will

be caused to engage in a commercial sex act . . . .").  Although the distinction is subtle and very

close, the Court finds that a defendant could be convicted of violating 18 U.S.C. § 1591 without

also committing conduct that would support a conviction under 18 U.S.C. § 2423(a), and vice

versa, because of these distinct mens rea requirements.  For example, a person who transports a

minor across state lines knowing that the minor is to be delivered to a pimp who will cause her to

engage in prostitution would be guilty of violating 18 U.S.C. § 1591, but would not be guilty of

violating 18 U.S.C. § 2423(a) unless it was additionally proved that the defendant also actually

intended that the minor engage in prostitution or other unlawful sexual activity.  In contrast, a

person who transported a minor across state lines with the intent that she be forced into

prostitution would be guilty of violating 18 U.S.C. § 2423(a), but would not be guilty of violating

18 U.S.C. § 1591 for the same conduct unless it was additionally proved that the defendant knew

that the minor would, in fact, be caused to engage in prostitution or commercial sex.  As a

practical matter, the Court has difficulty imagining many situations where interstate

transportation conduct found to violate 18 U.S.C. § 1591 would not also violate 18 U.S.C. §

2423(a), but the Court cannot find that the Blockburger test is not met upon a comparison of the

statutes, because each of the statutes requires proof of a different and distinct mens rea to support

a conviction.  For this reason, the Court agrees with the United States that 18 U.S.C. § 1591 and

18 U.S.C. § 2423(a) are not necessarily multiplicitous, and 18 U.S.C. § 2423(a) is not, in all

cases, necessarily a lesser included offense of 18 U.S.C. § 1591.  Again, the Court recognizes

that the distinction is relatively thin, but it cannot be ignored.  The Court thus concludes that the

Government may permissibly charge Defendants Robinson and Williams with violating both 18

U.S.C. §§ 1591 and 2423(a) through the same conduct or transaction without violating

Defendants' rights under the Double Jeopardy Clause, and therefore Defendants' motions to

dismiss the allegedly multiplicitous counts will be denied.

     **H.**     **Derick Price's Motion to Compel Production of Sentencing Guidelines**

Defendant Price has moved to compel the United States to produce information that may

be relevant to calculating his guideline sentence range that could potentially be imposed in

accordance with the United States Sentencing Guidelines.  (Doc. No. 457.)  Price contends that

production of all information that might be relevant to his potential sentence is necessary to allow

his counsel to represent him effectively, in order to advise Price as to the considerations relevant

to entering a guilty plea to some or all of the charges.  In support of his motion, Price refers to his

right under the Sixth Amendment to a fair trial and the assistance of counsel, and to his right to

due process generally.  The United States opposes the motion, noting that Defendant provides no

legal basis that compels the Government to provide a calculation of a defendant's potential

exposure under the sentencing guidelines.  Nevertheless, the Government has indicated its

willingness to provide counsel with a copy of Defendant's criminal history and to discuss

potential application of the Sentencing Guidelines in the event Defendant wishes to enter into

plea discussions, but underscores that any such discussions would include only estimates

regarding the range of penalties that Price could face if he were convicted.

The Court agrees that the United States is under no obligation to provide Defendant with

a calculation regarding his possible sentencing range, or to turn over any information that might

potentially bear upon the calculation of Defendant's sentence under the Sentencing Guidelines. The Court anticipates – and the Government represents – that in the course of plea discussions the United States typically discusses with counsel potential estimates regarding the application of the Sentencing Guidelines.  However, Price seems to be requesting that the Government be compelled to do much more than that in this case, and the Court does not find that the United States should be compelled to provide the sort of information – and precision – that Price appears to be seeking.  Indeed, if the Government were required to provide such information and calculations to counsel in order to ensure due process in this case, such would arguably be required in all cases where counsel moved to compel production of such information.  The Court is aware of no rule requiring that the Government undertake such an obligation and Price's motion will be denied.

## I.        Motions to Compel Discovery

A number of Defendants have filed additional motions seeking different types of pretrial discovery. Each motion is addressed separately below.

Defendant Price has moved for the early disclosure of material required to be disclosed under the Jencks Act, 18 U.S.C. § 3500.[7]  (Doc. No. 451.)   The Jencks Act requires the Government to make available to a defendant information regarding the statements of any witness in possession of the Government relating to the subject matter on which a witness testified.  18 U.S.C. § 3500.  The Jencks Act, by its terms, requires only that the Government produce such information after the witness has provided his or her testimony on direct

---

[7]  Defendant Williams has joined in this motion.  (Doc. No. 451.)

20

examination. 18 U.S.C. § 3500(a).[8]  As Price notes, however, courts have in certain cases

invoked their equitable authority to require the Government to produce such statements in

advance of trial if necessary to avoid unnecessary delays or to ensure fairness.  Price has

requested that the Government be required to produce Jencks Act material thirty days in advance

of trial. In response, the United States has agreed to provide Jencks statements in advance of trial,

but declines to commit to producing such information by a date certain prior to trial.  In light of

the Government's agreement to provide the material prior to the time it would otherwise be

required to produce such statements, and given the absence of compelling justification to require

that the Government produce such information thirty days before trial begins, the Court is

satisfied that Price and the remaining Defendants will not be prejudiced by denying the motion.

The Court expects that the Government will make the Jencks Act material available to all

defense counsel sufficiently in advance of trial to ensure counsel have a reasonable opportunity

to review the statements and in order to avoid any unnecessary delays.

Price has also requested that the United States provide him with notice of its intent to use

Rule 404(b) evidence, and Rule 12(b)(4)(B) evidence, and any hearsay evidence as an exception

to the hearsay rule under Federal Rule of Evidence 807.[9]  (Doc. Nos. 322, 323, 324.)  In

response, the United States has represented that to the extent not already provided to counsel, the

---

[8]  Specifically, 18 U.S.C. § 3500(a) provides that "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).

[9]  Defendant Price docketed these discovery requests as "notices," but the United States treated them as motions to compel discovery, and the Court has accordingly adjudicated the notices as if they were motions.

Government will provide notice of its intent to use Rule 404(b) evidence.  With respect to Rule 12(b)(4)(B) evidence, the Government has represented that all Rule 12(b)(4)(B) evidence was included with discovery already provided to all counsel in this case.  Finally, the United States has represented that it will not introduce any hearsay statements at trial and that the evidence to be presented will consist of direct testimony, non-hearsay testimony, or testimony subject to a recognized exception to the hearsay rule.  For these reasons, the Court agrees with the United States that these discovery requests should be denied as moot.

Defendant Williams has moved for the disclosure of favorable evidence and for general discovery and inspection.  (Doc. Nos. 172, 173.)  The United States has represented that any favorable evidence was included in the discovery already produced to the Defendants and their counsel, and that defense counsel have been afforded the opportunity to inspect any physical evidence that was not capable of being included with the substantial electronic media already made available to counsel.  On the basis of this representation, the Court agrees that Defendant Williams's discovery motions should be denied as moot.

Defendant Robert Scott, Sr., has moved for the discovery of a variety of different evidence or other information.  (Doc. No. 419.)  First, Scott has moved to compel the production of all reports from the State of Ohio, City of Toledo, or other local or state police reports relating to the charges alleged against him, to the extent the United States is in possession of such material.  In response, the Government represents that it has produced all information in its possession regarding Defendant's criminal history, which constitutes the only evidence in the United States' possession regarding the charges alleged in this case.

Defendant Scott also requests photographs from the Ohio police which he claims have

22

not been provided to his counsel.  In response, the United States has represented that it has made

available for photocopying and inspection all photographs in its possession.

Scott has also requested that the Government provide notice of its intention to use at trial

hearsay statements as an exception to the hearsay rule under Federal Rule of Evidence 807.  The

United States responds that it intends to use direct testimony, witnesses, and statements made in

furtherance of the conspiracy, all of which it contends will constitute non-hearsay and therefore

will not be subject to Rule 807.

In another request, Scott seeks to require the United States to provide notice of its

intention to introduce evidence of his prior crimes, wrongs, or other acts.  In response, the United

States references the listing in the superseding indictment evidence of an arrest of Scott in Ohio,

at which time he was in the company of a co-conspirator, with charges relating to prostitution.

Lastly, Scott requests a written summary of any expert testimony that the Government

intends to use as part of its case-in-chief.  In response, the United States represents that it does

not intend to call any expert witnesses as part of its case-in-chief, but will notify all parties and

their counsel in the event this decision changes prior to trial.

The Court agrees with the United States that Scott's discovery-related requests have been

addressed in full, and therefore his motion to compel discovery will be denied as moot.

## J.      Derek Maes's Pretrial Motions

Defendant Maes has filed a number of pretrial motions seeking various forms of relief.

(Doc. Nos. 180, 184, 185, 186, 187, 435, 437, 439, 441, 442, 444, 469, 557, and 626.)   As noted

above, on February 26, 2007, Maes pleaded guilty to Counts 1, 2, and 7 of the superseding

indictment pursuant to the terms of a plea agreement.  In exchange for his guilty plea and other

promises, the United States has agreed to dismiss all remaining counts brought against Maes.

Maes having pleaded guilty, the Court will deny all of Maes's pending pretrial motions as moot.

### K.      Atlas Aquarius Simpson's Pretrial Motions

Defendant Simpson moved to suppress the results of certain telecommunications

intercepts, and he additionally moved to sever his trial from those of his co-defendants.  (Doc.

Nos. 447, 449.)  As noted, Defendant Simpson has entered into a plea agreement with the United

States by which he agreed to plead guilty to Counts 1 and 2 of the superseding indictment.  As a

result, the Court will deny Simpson's pending pretrial motions as moot.

An appropriate order disposing of the foregoing pretrial motions follows this

memorandum.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No. 05-CR-443** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **FRANKLIN ROBINSON, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

    **AND NOW**, this 14th day of March 2007, upon due consideration, and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT:**

1.    Defendant Robinson's Motion for a Bill of Particulars (Doc. No. 431) is **DENIED.**

2.    Defendant Kenneth Britton's Motion for a Bill of Particulars (Doc. No. 465) is **DENIED.**

3.    Defendant Robert Scott, Sr.'s, Motion for Severance (Doc. No. 415) is **DENIED.**

4.    Defendant Derick Price's Motion for Severance (Doc. No. 453) is **DENIED.**

5.    Defendant Derick Price's Motion to Strike Alias and other Surplusage (Doc. No. 455) is **DENIED.**

6.    Defendant Terrance Williams's Motion to Strike Alias from Indictment (Doc. No. 174) is **DENIED.**

7.    Defendant Eric Hayes's Motion to Strike Surplusage from Indictment (Doc. No. 478) is **DENIED.**

8.    Derick Price's Motion to Dismiss Count 31 for Failure to State a Claim (Doc. No. 452) is **DENIED.**

9.    Derick Price's Motion to Suppress Evidence (Doc. No. 456) is **DENIED** as moot.

10.    Defendant Robert Scott, Sr.'s, Motion to Dismiss the Indictment (Doc. No. 417) is **DENIED.**

11. Defendant Terrance Williams's Motion to Dismiss Multiplicitous Counts (Doc. No. 511) is **DENIED.**

12. Defendant Franklin Robinson's Motion to Compel the Government to Elect Among Multiplicitous Counts (Doc. No. 372) is **DENIED**.

13. Defendant Williams's Motion for Discovery and Inspection (Doc. No. 172) is **DENIED** as moot.

14. Defendant's Motion to Compel Disclosure of Evidence Favorable to the Accused (Doc. No. 173) is **DENIED** as moot.

15. Defendant Derick Price's Motion for Production of Sentencing Guideline Information (Doc. No. 457) is **DENIED.**

16. Defendant Derick Price's Motion for Early Production of Jencks' Material (Doc. No. 451) is **DENIED.**

17. Defendant Derick Price's Motion to Compel the Government to Provide Notice of its Intent to Use Rule 404(b) Evidence (Doc. No. 322) is **DENIED** as moot.

18. Defendant Derick Price's Motion to Compel the Government to Provide Notice of its Intent to Use Rule 12(b)(4)(B) Evidence (Doc. No. 323) is **DENIED** as moot.

19. Defendant Derick Price's Motion to Compel the Government to Provide Notice of its Intent to Use Hearsay Evidence as an Exception to Rule 807 (Doc. No. 324) is **DENIED** as moot.

20. Defendant Robert Scott, Sr.'s, Motion to Compel Discovery (Doc. No. 419) is **DENIED** as moot.

21. Defendant Derek Maes's pretrial motions (Doc. Nos.180, 184, 185, 186, 187, 435, 437, 439, 441, 442, 444, 469, 557, and 626) are **DENIED** as moot.

22. Defendant Atlas Aquarius Simpson's pretrial motions (Doc. Nos. 447, 449) are **DENIED** as moot.


S/ Yvette Kane
_____   _____
Yvette Kane, Chief Judge
Middle District of Pennsylvania